THE CITY OF GALVESTON v. D. F. MORTON.

(Case No. 831.)

1. CITY CHARTER — VETO MESSAGE.— It is not necessary that a veto message of the mayor of Galveston, objecting to the passage of an ordinance or resolution, should be returned to the city council within three days after the passage of the ordinance or resolution which it proposes to veto. No such duty can be inferred from the requirement to place such resolution or ordinance in the office of the city clerk, and for it to remain there for three days before going into effect. It there awaits the veto, or the express or silent approval of the mayor, for three days.

2. SAME.— As the objections of the mayor, in case of veto, are to be returned to the city council with the ordinance vetoed, they must be placed with it in the clerk's office to await a session of the city council, and when this occurs they are to be sent in together for action.

3. Veto of a mayor.— A verbal motion, made and carried in the city council of the city of Galveston, to accept a proposed contract on the part of a citizen to do city printing, which was referred by a committee having full control of the matter to the council for its action, was not such a resolution as was required to be placed in the clerk's office for three days to await the action of the mayor.

4. Same.— The mayor of the city of Galveston has no power to compel a two-thirds vote of the city council by his veto, in order to validate a contract with the city, authorized by previous resolution, and ratified on motion by the council.

5. Cases approved.— Gas Co. v. San Francisco, 6 Cal., 190, and San Antonio v. Lewis, 9 Tex., 69, approved.

6. City charter construed.— Art. V, sec. 1, title X, of the Galveston city charter, did not confer on the city council power to select and contract with a new printer, in its discretion, during the municipal year for which a contract with another printer had already been made.

7. Charge of the court — Verdict.— A verdict of the jury sustaining a contract for erroneous reasons under the influence of an erroneous charge will not be disturbed when the verdict is clearly right and the contract valid, though from a different view of the law from that given in charge by the district judge.

Appeal from Galveston. Tried below before the Hon. Wm. H. Stewart.

Suit by D. F. Morton & Co. against appellant, claiming actual and exemplary damages for breach of an alleged contract entered into between plaintiff in person, and defendant through its agent, the city council of Galveston; the alleged contract being the award and acceptance of a contract for city printing for the current municipal year, at a price stipulated in a bid filed by plaintiffs on the 17th of April, 1876, and alleged to have been accepted by defendant on same day through its council.

On June 9, 1876, the city filed a general demurrer and a general denial; on October 13, 1876, special exceptions to appellees' petition; and on the same day an amended answer, setting up the defense that the proceeding of the city council of appellant, accepting the appellees' offer to perform the service at the stipulated price, was vetoed by the mayor of the city of Galveston within the time and in the manner prescribed by the charter of the city, and which veto was not overruled by a two-thirds vote of the city council, upon reconsideration, as was required by the charter of the city.

On October 17, 1876, there was a trial, and judgment rendered for appellees for $525.27, with interest and costs of suit.

At a meeting of the city council on April 3, 1876, Mr. Hill, an alderman, offered the following resolution, which was adopted: "Resolved, That the printing committee be authorized to advertise for bids to do the city printing for the ensuing year."

On April 17, 1876, the printing committee reported that "The Galveston Daily Commoner," appellees' paper, was the lowest bid, but

that they did not feel authorized to discriminate between newspapers, and referred the matter to the city council. The report was read, and it was moved and carried in the council that "The Commoner" be awarded the contract for printing, and be required to enter into bond in the sum of $10,000 for the faithful performance of the work.

A bond, executed with sureties in the amount required, was made by D. F. Morton & Co. April 18, 1876, and appears to have been approved by J. Dyer, the chairman of the finance committee.

At a regular meeting of the city council afterwards, on May 3, 1876, the veto message of the mayor was read, in which he undertook to veto the resolution of the city council awarding the city printing to appellees. After reading the message a motion was made to reconsider the action "of the city council" awarding the printing to the appellees. The vote on that motion was a tie, and the mayor then voting "yea," declared the motion adopted. The question recurring on the motion to award the printing to appellees, it was lost.

The charter provides that "all ordinances and resolutions adopted by the council shall, before they take effect, be placed in the office of the city clerk, and if the mayor approve thereof, he shall sign the same, and such as he shall not sign he shall return to the city council with his objections thereto; and if the mayor shall neglect to approve, or object to any such proceedings for a longer period than three days after the same shall be placed in the clerk's office, the same shall go into effect."

Mr. McInerney, city clerk, testified that the motion of Mr. Marlow to award the contract was oral, and was written on the minutes and placed in the city clerk's office on the night of April 17, 1876; that on April 20, 1876, during daylight, the mayor gave witness his veto message, to be placed by witness in the city clerk's office, and witness did so place it the same day. The veto message was in an envelope when witness received it from the mayor; the envelope was not sealed, but was afterwards sealed by witness without examination. Witness never gave plaintiff notice of the veto. It remained in the envelope, sealed up, until May 3d. Plaintiff asked witness, some time after the message had been given witness, to let him (plaintiff) see it, which witness refused. The meeting of the council on the 17th of April was adjourned over to the 20th of April, and then it was assembled at four o'clock P. M., and continued in session about three hours. The veto message was not presented to the council on the 20th of April. Witness does not know

whether he had received it at the time the council met. Witness had no instructions from the mayor as to sealing up the message or locking it up in the safe, but did lock it up in the safe. There should have been a regular meeting of the council on the 1st of May, but there was no quorum and no meeting. The veto message was presented to the council at the adjourned meeting on May 3, 1876.

W. A. Shaw testified that he published the newspaper, "Daily Commoner," for appellees, and it was issued daily, except Sunday, from March 16, 1876, until the contract with the city was repudiated by the city. The value of the printing for the city in the newspaper of appellees was $876.77. Witness knew of the repudiation of the contract by the city from the proceedings of the city council. The paper was stopped immediately upon the repudiation of the printing contract, and was stopped in consequence of said repudiation.

*R. V. Davidson*, for appellant.— No resolution or ordinance, having been passed by the council and placed in the city clerk's office, can take effect and be of force, unless the mayor shall approve the same, or shall neglect to approve or object to the same for a longer period than three days after it has been placed in the city clerk's office; or until the mayor, having so objected, the council shall, after reconsideration, pass the same by a vote of two-thirds. And that when the mayor has deposited with the city clerk, to be filed in said clerk's office, his objections to such resolution or ordinance, within three days after such resolution or ordinance shall have been placed in said office, such resolution or ordinance will not take effect or be in force until the city council, after reconsideration thereof, shall have again passed the same by a vote of two-thirds. Charter of City of Galveston of 1871, title III, art. VI, § 1; Charter of City of Galveston of 1871, title III, art. II, § 1.

*Howard Finley*, for appellee.

I. A municipal government, outside of its governmental capacity, is, in many respects, to be regarded the same as a private corporation; and all parol contracts made by the authorized agents of a corporation, within the scope of the legitimate purposes of its institution, are express promises of the corporation, and are valid.

II. When a party to a contract with the city has executed his bond and otherwise complied with all the terms of the contract, and has performed work under his contract, until he has knowledge of the repudiation by the city of the contract, and when the agents of

the city have designedly kept hidden and concealed from him their purpose of repudiation of the contract, after he had sought diligently for information in the proper quarter in order to protect his sureties, he is entitled to compensation for his work and services in the actual and fair value of the same.

Willie, Chief Justice.— In order that the appellee might successfully maintain this action below, it was necessary for him to prove a contract entered into between himself and the city to do the city printing for the municipal year commencing in March, 1876. To establish this he proved a resolution duly passed by the council authorizing the printing committee to advertise for bids to do the city printing for that year; also a bid put in by himself, which was the lowest, and which, owing to certain circumstances, was referred for action to the council; also the action of the council thereon, who, upon motion of a member, accepted his offer; also the filing by him of a bond conditioned as required by the council and approved by their chairman of the finance committee. It was proved on the part of the defense that this action of the council was vetoed by the mayor, and upon reconsideration the veto was sustained; and the defense claimed that this defeated the contract, and the appellee had no claim against the city for not complying with it. The court below held that the action of the council was subject to the mayor's veto, but that he did not comply with the requirements of the charter in sending in his objections; that the veto was therefore of no effect, and the subsequent proceedings of the council sustaining the objections were void, and hence the contract became of binding force by reason of the original vote of the council. In this we think the court erred.

The ground upon which the district judge based his decision was, that the objections of the mayor must be returned to the council within three days after the passage of the ordinance or resolution which he proposes to veto. The charter in terms makes no such requirement. The resolution or ordinance, when passed, is placed in the clerk's office, where it remains for three days before going into effect, and where it awaits the veto, or express or silent approval, of the mayor. Should he disapprove, he is commanded to return it to the city council; but nothing is said of such return being made in three days. This is inferred by the court below from the fact that the ordinance remains in the clerk's office waiting for the mayor's action for that length of time. Our inference is, that as the objections are returned to the council with the ordinance vetoed,

they must be placed with it in the clerk's office and there await a session of the council, and when this occurs they are sent in together for action. Otherwise, by a refusal of a sufficient number of members to attend and form a quorum, a veto could at any time be prevented.

But in the view we take of the case this ruling becomes of no importance. We are of opinion that the contract was completed when adopted by the board of aldermen, and that it was not subject to the mayor's veto.

The charter requires that all ordinances and resolutions, before they take effect, shall be placed in the clerk's office for action by the mayor. This was neither an ordinance nor a resolution in the proper sense of the term, so as to be liable to objections on the part of the mayor. It is not termed such in the proceedings of the council, and has none of the features of either. It was a verbal motion, and referred solely to the acceptance of a proposed contract on the part of appellee. Contracts are made by corporations in various ways. They may be made by the council direct, or by agents appointed by the council with power to act, and by agents whose acts, although unauthorized originally, are afterwards ratified by the proper authorities. The authority is often implied when neither given originally and no ratification follows. The resolution originally adopted, which was passed regularly through the council and approved by the mayor, authorized certain agents to publish for bids to do the printing. This resolution did not say that these agents were to accept the bids, or that anyone else was to do so. The inference would seem to be, that the persons who were to do the advertising and receive the bids were also to accept or reject them. This seems to have been the construction of the committee themselves, or they would not have assigned special reasons for referring the matter to the council. Be this as it may, it was owing to this reference that the council seem to have taken the matter into consideration. A motion was then made to award the contract to appellees, and carried almost unanimously. This transpired in reference to the matter of making an agreement for the city printing, something that could have been done by an agent by authority of the council without any subsequent ratification on their part, and been as binding as if sanctioned by that body and approved by the mayor. San Antonio v. Lewis, 9 Tex., 69.

It is certainly not necessary to go through with the forms of passing an ordinance or a resolution, and having the same approved by the mayor, to do a thing which a single agent could have done for

the corporation, and bound it, without any approval on its part of his course. Our view is, that it is only in cases where the council is taking action which partakes of the nature of legislation that the veto of the mayor can be interposed. But that in the mere matter of accepting a contract authorized by a previous resolution or ordinance, the mayor has no authority to defeat the will of the aldermen so as to compel a two-thirds vote to consummate the agreement.

In Gas Co. *v.* San Francisco, 6 Cal., 190, a contract was made with the company for lighting the city with gas, which was to be subject to the approval of the common council. It was approved by the council by resolution, which was not submitted to the mayor for approval. The court held this approval not necessary, and the contract complete.

And so in this case, we are of opinion that when the council voted to give the contract to appellees, the contract was consummated without submitting the vote to the mayor for approval.

But a question arises as to the power of the city to repudiate her contracts for printing, though properly made, on the ground that the employment of a printer under the charter lasts only till a new one is selected. Art. V, sec. 1, title X, of the charter, provides "that the city council shall, as soon as may be after the commencement of each municipal year, contract (as they may by ordinance or resolution determine) with a public newspaper of the city as the official paper thereof, and to continue as such until another is selected," etc. It is contended that this gives the city the power to select a new printer whenever it chooses, and by necessary implication allows it to discharge the one already employed. Hence that the appellee had no cause to complain of his agreement having been repudiated, as he contracted with full knowledge of the powers of the city under this section. We do not concur in this view.

By requiring the city council to make the contract as soon as possible after the commencement of each municipal year, the charter intended to make these contracts to continue a year. By providing that they should continue till another paper was selected, it probably intended to fix the term of the employment so that it should last till the city should select another paper after the commencement of a new municipal year. The requirement of an annual appointment was in the interest of economy, as better rates could be had for a long term than for a short one. It is hardly to be supposed that it would give the power to discharge the printer at will, when no one would accept employment on such terms. To carry

out the contract, much preparation on the part of the printer would have to be made and expense incurred. At least such was the case in this instance. No one would make such preparation and incur such expense to undertake a contract existing only at the will of the council.

But admitting that a new printer could, under the charter, be selected at any time before the expiration of the year, it was not out of the power of the city to contract upon a good consideration that she would not do so, which was the effect of the contract in this instance. The city would lose nothing by a failure on the part of the printer to perform his contract, as it could then rescind it, as in the case of contracts between individuals when violated by one party to them.

We think the contract was consummated by the action of the council, and was not subject to the veto, nor liable to be repudiated by the city because of her right to select another printer, and that the appellee is entitled to recover the damages assessed in his favor.

Whilst the court erred in its charges as we have held, the same result was obtained as if he had charged the jury in accordance with this opinion. The contract is held binding under the charge as well as under this decision, and the verdict of the jury which sustained it for erroneous reasons will not be disturbed where it is correct upon a proper view of the law. This court has always refused to set aside a verdict correct in itself because of an error of the judge in his charges, when, if a correct charge had been given, they would necessarily have come to the same conclusion. Merriwether v. Dixon, 28 Tex., 19.

The judgment below is affirmed.

                                                    AFFIRMED.