## WRAY v. CITIZENS' NAT. BANK OF DUBLIN. (No. 690–4603.)

(Commission of Appeals of Texas, Section B. Nov. 17, 1926.)

**1. Courts ⬤⟹97(5)—Federal decisions are controlling in dealing with national bank.**

In dealing with internal operation of a national bank, federal decisions are controlling.

**2. Banks and banking ⬤⟹233—State cannot vary method provided by Congress for increase of capital stock of national bank.**

Congress having provided a definite method under which capital stock of national bank may be increased, no state has authority to vary that method.

**3. Statutes ⬤⟹184—Purpose of Congress may be looked to in construing act.**

Purpose of Congress in passing act may be looked to in determining its construction.

**4. Banks and banking ⬤⟹241—Defendant held estopped to contend that issuance of shares of stock in national bank in consideration of his note was unlawful so as to defeat recovery on renewal note, where he had received benefit of stock (U. S. Comp. St. § 9679; Const. Tex. art. 12, § 6; Vernon's Sayles' Ann. Civ. St. 1914, art. 1146).**

Defendant *held* estopped to contend that issuance of shares of stock in national bank in consideration of his note alleged in violation of U. S. Comp. St. § 9679, Const. Tex. art. 12, § 6, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1146, was unlawful so as to defeat recovery on renewal note, where he had received stock and enjoyed privileges and benefits thereof, notwithstanding that his investment was not profitable.

**5. Evidence ⬤⟹65—Defendant held charged with knowledge of act of Congress prohibiting issuance of stock of national bank for note (U. S. Comp. St. § 9679).**

Defendant receiving stock of national bank in consideration of his note was charged with knowledge of U. S. Comp. St. § 9679, prohibiting such transaction.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by the Citizens' National Bank of Dublin against George H. Wray. Judgment for plaintiff was affirmed by the Court of Civil Appeals (282 S. W. 659), and defendant brings error. Affirmed.

Oxford & Johnson, of Stephenville, for plaintiff in error.

Chandler & Pannill, of Stephenville, for defendant in error.

POWELL, P. J. For a brief statement of the nature and result of this action, we quote as follows from the opinion of the Court of Civil Appeals (282 S. W. 659):

"The appellee brought this suit against appellant upon a note executed by the latter to the order of appellee in the sum of $1,248.

"The facts pertinent to the appeal are as follows:

"Appellee is a national banking corporation. In the latter part of 1919 it was decided to increase its capital from $50,000 to $100,000 and at the same time increase its surplus $10,000. For this purpose stock was to be issued of the par value of $100 per share and sold at $120. Appellant subscribed for ten shares, and in payment therefor executed his note for $1,200 in favor of appellee, due in six months. This note was renewed at six months intervals. The note sued upon is the last renewal given. Due to losses sustained, the capital of the bank in December, 1922, was reduced to $50,000, the stockholders accepting, in lieu of cash for such reduction, the assets of the bank charged off at that time. The note sued upon was executed subsequent to this reduction of the capital, and with knowledge upon appellant's part of such reduction.

"When appellant executed the original note the amount thereof was transferred by the bank upon its books from its general funds 'to the

fund with the other money that was turned in to take care of the increase making up that $60,000.' The note was placed among the general assets of the bank. The Comptroller of the Currency was notified by the bank that its capital had been increased $50,000 and the whole amount paid in, and that the paid-up capital then amounted to $100,000, whereupon the Comptroller issued this certificate:

"'Washington, D. C., Jan. 7, 1920.

"'Whereas, satisfactory notice having been transmitted to the Comptroller of the Currency that the capital stock of the Citizens' National Bank of Dublin, Tex., has been increased in the sum of fifty thousand dollars in accordance with the provisions of an act of Congress approved May 1, 1886, and that the whole amount of the increase has been paid in, and that the paid-up capital stock of the bank now amounts to the sum of one hundred thousand dollars.

"'Now, it is hereby certified, that the capital stock of the Citizens' National Bank of Dublin having been increased in the sum of fifty thousand dollars and the amount of the increase paid into the bank as a part of the capital stock thereof, the said increase of capital is approved.

"'In witness whereof, I hereunto affix my official signature and seal of office.

"'[Signed] T. P. Kane,

"'Acting Comptroller of the Currency.

"'[Seal.]'"

The certificate for the shares of stock purchased was then issued to Wray. It was accepted by him, and he enjoyed all the rights and privileges of a shareholder, including attendance upon the meetings of the stockholders.

The district court gave judgment in favor of the bank for the amount due upon the note, as per its terms. That judgment was affirmed by the Court of Civil Appeals. See 282 S. W. 659.

The contention by Wray is well stated by the Court of Civil Appeals in the following language:

"Appellant contends that under section 9679, U. S. Comp. Statutes, Article 12, § 6, of the Constitution of Texas, and Article 1146, Vernon's Sayles' R. S. of this state, it was unlawful for appellee to issue to him the ten shares of stock in consideration of his note, and, since the note sued upon is simply a remote renewal of the original note, it is not collectible."

The applicable portion of the federal statute aforesaid reads as follows:

"No increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the Comptroller of the Currency, and his certificate obtained specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such association." U. S. Comp. St. Sec. 9679.

Section 6 of article 12 of the Texas Constitution reads as follows:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Article 1146 of Vernon's Sayles' Revised Civil Statutes of Texas reads as follows:

"No corporation, domestic or foreign, doing business in the state, shall issue any stock whatever, except for money paid, labor done, which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received, reasonably worth at least the sum at which it was taken by the company. Any corporation which violates the provisions of this article shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, permit or license, as the case may be, and all rights and franchises which it holds under, from or by virtue of the laws of this state."

[1] In the first place, we are dealing in the instant case with the internal operation of a national bank. This being true, the federal decisions are controlling. We stated this principle as follows in the case of Citizens' National Bank of Stamford v. Stevenson (Tex. Com. App.) 231 S. W. 366:

"The defendant in error invoked the Texas law in an effort to avoid his note. The plaintiff in error is a national bank, incorporated by the federal government as one of its agencies, and subject to its laws. In its organization and issuance of stock it is subject to the federal statutes, which are supreme and controlling. It is well settled that, if the federal and state provisions upon any point with reference to national banks conflict, the state rules must yield. See Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700; Easton v. State of Iowa, 188 U. S. 219 [220], 23 S. Ct. 288, 47 L. Ed. 452; F. & M. National Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196. The latter case is cited with approval by the Supreme Court of Texas in the case of Boerner·v. Traders' National Bank, 90 Tex. 443, 39 S. W. 285."

[2] Congress has provided a definite method under which capital stock of national banks may be increased. No state has any authority to vary that method. This is well settled. We are confronted here, in the first place, with a construction of the act of Congress just quoted. The attorneys on each side of this controversy are very able and have displayed much zeal in presenting their briefs. But they cite no federal case which decides the question as to whether or not a bank, in increasing its capital stock, may make a general loan to a solvent stock subscriber who may, in turn, use the proceeds of such loan in paying for his portion of the increased capital stock. Since there seems to be no federal decisions upon the point, counsel for Wray contend that our Texas decisions upon similar statutes should be controlling upon the Texas courts in construing the act of Congress. We shall not decide this contention. In the view we take of the correct disposition of this case, we do not deem it necessary to decide whether the note in suit was in fact in violation of the act of Congress aforesaid. The Court of Civil Appeals speaks upon that point as follows:

"As has been said, the federal law does not undertake to specify the manner in which the increased capital shall be 'paid in as part of the capital of such association.' The business of a national bank is to act as a depository and lend its funds. The evidence shows that appellant was solvent at the time he gave the original note, and is still solvent. Appellee had a perfect right to lend appellant $1,200 for any legitimate purpose. We doubt if it is sound to say that a national bank cannot lawfully lend a solvent and satisfactory customer money which the latter desires to invest in the purchase of a part of a proposed increase in the capital stock of such bank. That was the substance of the transaction in the case at bar. What occurred in this case doubtless frequently occurs when national banks increase their capital. While it may violate the letter of the federal law, we doubt if the spirit is violated, when the notes of solvent and otherwise desirable persons are thus taken, in view of the business of a bank to lend its money."

Counsel for Wray, on the other hand, cite the opinions of Chief Justice Phillips in the case of Thompson v. First State Bank of Amarillo, 109 Tex. 419, 211 S. W. 977, and Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320. In those cases, our Supreme Court held that a note, given in payment of stock in a Texas corporation, is not "property actually received." Of course, it was also held that a note was not "money paid."

But, it is easily observed that the Texas Constitution and applicable statute go into much detail in their control of the issuance of stock. The act of Congress, aforesaid, on the contrary, does not do so. The latter act merely says that the increase must be "paid in." It is not provided that it must be paid in in money, labor, or property. So, the Texas courts have construed a differently worded statute.

It seems to be an open question as to just what the act of Congress means. Neither the federal nor Texas courts have construed that very language. We do not attempt to do so here, because we think it is unnecessary to do so. If it be conceded, for the purposes of this case only, that the giving of the note in suit was not in compliance with the act of Congress, it is still true, under both the federal and Texas decisions, that it does not lie in the mouth of Wray to avoid the payment of his note. It is to a consideration of this principle that we shall now address ourselves.

[3] In the first place, it is well to look to the purpose of Congress in passing the act under consideration. That purpose has been clearly expressed by the Supreme Court of the United States in the case of Scott v. Deweese, 181 U. S. 210, 21 S. Ct. 587 (45 L. Ed. 822). The court speaks as follows:

"The primary object of the provision that 'no increase of capital shall be valid until the whole amount of such increase is paid in' was to prevent the 'watering' of stock, that is, prevent banking business being done upon the basis of an increased capital which did not in fact exist. If this prohibition be disregarded by a national bank, the conduct of its business could no doubt be controlled by the representatives of the Government so far as might be necessary to compel obedience to the law. Rev. Stat. § 5205. But the statute does not, in terms, make void a subscription or certificate of stock based upon increased capital stock actually paid in, simply because the whole amount of any proposed or authorized increase has not in fact been paid into the bank."

As stated, if this provision is violated, the government could compel obedience to the law and close the bank if necessary. It could compel the "payment in" of amounts due on stock subscription so that the capital stock would not be "watered." In the Deweese Case, the stockholder's liability was upheld. But counsel for Wray insist that in all the cases, the rights of creditors of an insolvent bank were involved, and that a different rule should apply as between the bank itself and the maker of such a note. We have been unable to find a case of this kind, involving an increase of capital stock of a national bank, and counsel cite none. But we do have access to a case exactly analogous, as we construe it. We refer to the case of National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188. The holding in the Matthews Case is referred to by the court in the Deweese Case, supra, as follows:

"In National Bank v. Matthews, 98 U. S. 621, 629 [25 L. Ed. 188], it appeared that a national bank had made a loan of money, the repayment of which by the borrower was in part secured by a deed of trust on real estate. The borrower insisted that the taking of the deed of trust as security was in violation of the act of Congress. This court conceded that the statute by clear implication forbade a national bank from making a loan on real estate security, but held that the violation of the statute by the bank was a matter of which the borrower could not complain, saying: 'We cannot believe it was meant that stockholders, and perhaps depositors and other creditors, should be punished and the borrower rewarded, by giving success to this defense whenever the offensive act shall occur. The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other contemplated by Congress. That has been always the punishment prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to invoke its application. A private person cannot, directly or indirectly, usurp this function of the government.' The doctrine of the Matthews Case has been often reaffirmed. Whitney v. Wyman, 101 U. S. 392, 397 [25 L. Ed. 1050]; Jones v. Guaranty and Indemnity Co., 101 U. S. 622, 628 [25 L. Ed. 1030]; Fritts v. Palmer, 132 U. S. 282, 291 [10 S. Ct. 93, 33 L. Ed. 317]; Logan County Nat. Bank v. Townsend, 139 U. S. 67, 76 [11 S. Ct. 496, 35 L. Ed. 107]; Thompson v. St. Nicholas Nat. Bank, 146 U. S. 240, 251 [13 S. Ct. 66, 36 L. Ed. 956]."

In the Matthews Case, the bank had no right to take the security it did take. It violated the act of Congress in doing so. But the statute in that case was for the protection of the government in administering national banks upon a safe and conservative basis and in a way best suited to the needs of commercial banks. The government had the right to dissolve such a bank and cancel its charter for such violation. But since both the bank and the borrower have violated the law, it was not proper to reward the borrower. It is generally held by our courts that where both parties are "equally the subjects of legal censure," they will be left where they have placed themselves.

[4] In the Matthews Case, the borrower received his money. He had the benefit of the loan. In the case at bar, Wray received his stock. He enjoyed the privileges and benefits thereof. He was ready to receive the possible profits arising from his stock. He kept his position, for years, to get the benefits of his stock. He received the same treatment as all other stockholders. It is true, he seems to have lost some on his stock. But other stockholders did likewise. All of them took a chance together. Why should he, after having acted as a stockholder all those years, now be permitted to repudiate his debt even though his investment proved unprofitable?

[5] It is practically conceded by counsel for Wray that if the rights of creditors were involved, Wray could be made to pay this note. Even upon this basis, we think that he should be required to pay this note. In the Matthews Case, the court asks why should the other stockholders, and perhaps depositors and other creditors, be punished? We ask that same question here. Wray's note is a valuable asset. The court finds he is solvent. His fellow stockholders are entitled to have this bank, which seems to be in a more or less shaky condition, realize on and conserve its every asset. Not only so, but the depositors of the bank are entitled to have the assets conserved. They have a potential right to be protected. There is no national banking guaranty of deposits law. Wray held himself out as a stockholder at all times. The depositors so considered him. Even after the stock was reduced, he accepted his certificate for the fewer shares and still renewed his note. He cannot, at this late day, come in and repudiate his debt to the bank even though his investment has proved unprofitable. The rights of others have attached. Wray was charged with knowledge of the act of Congress. If he and the bank both violated the law, a point we do not here decide, then the federal government alone can complain. As stated by Chief Justice Phillips in the case of Thompson v. First State Bank, supra, "The plea of his own wrong by one in default is a weak plea at best."

We think the federal decisions are absolutely controlling upon this point, and that this note must be paid; but we are glad that our holding is not contrary to the Texas decisions upon the same point.

In each of the opinions by Chief Justice Phillips to which we have already alluded, the maker of the note, although in a sense an invalid instrument, was held liable. In the Bank Case, the bank was insolvent and in liquidation and the rights of creditors had attached. In the Washer Case, the note was in the hands of a bona fide holder for value. And, in this connection, it is worthy of note that no case is cited by any of the attorneys in the instant case where a man was ever relieved by the court of his liability on a note which he executed under circumstances like those present in the case at bar.

As shown, the opinion by Chief Justice Phillips did not have under review a case exactly like the one here. But his reasoning is all in favor of our holding in the instant case. We quote from his opinion in the Washer Case as follows:

"There is no declaration in the constitutional provision that a transaction in which something other than money, property, or labor is received in payment for the corporation's stock shall be utterly void. It prohibits such a transaction and, therefore, makes it unlawful, but that is the extent to which it goes. If a security be accepted in payment for the stock, such, for instance, as a subscriber's note, which is not property for such a purpose, the Constitution does not say either that it, or the stock issued for it, shall be void. The acceptance of the note in payment for the stock and the issuance of the stock are only interdicted. The word 'void' is used but once in the constitutional provision, and that, it is to be noted, is not in the clause which prohibits the issuance of stock for other than money, property or labor. It is in the distinct clause which says that all fictitious increase of stock or indebtedness shall be void. While the term is found in that clause of the section, the framers of the Constitution avoided its use in the other. It must be assumed that they did so deliberately.

"There is an essential difference between prohibiting a certain form of transaction—making it unlawful, and declaring that it, with all securities issuing out of it shall be utterly void. It is a distinction familiar in the law."

The aforesaid holding of our Texas court is in exact accord with the federal construction of the act of Congress now under consideration.

But we think the real gist of the case is expressed by the learned Chief Justice in the Washer Case, supra, when he speaks as follows:

"The constitutional provision was not intended as a shield for the stockholder who has not paid for his stock. It was not framed for his benefit. It was aimed against his acquiring stock except upon lawful payment. It was designed for the protection of the corporation and its creditors. It emphasizes the stockholder's obligation to make full and lawful payment

in accord with its mandate, rather than furnishes him a defense when he has failed in that obligation. Its purpose is to give integrity to the corporation's capital. It is to prevent false pretense at its hands, and avoid imposition upon the public."

With this last-quoted sentiment by our own Supreme Court we are in hearty accord. Statutes of this kind were not designed to assist the maker of a note to repudiate the same at the expense of his fellow stockholders, depositors, and other creditors of the bank. Of course, if the government steps in and dissolves the bank or declares illegal the issuance of such stock, then adjustments on the note would probably and properly follow. We have no such situation here. In this case, a man has in his possession just what he purchased. The bank is operated and the government seems satisfied. He made a note and received what he bought. He must pay that note.

We do not think there is much confusion in the authorities. In fact, there is a dearth of authority, state or federal, upon the very point, in an exactly similar fact case, which we have been discussing. But the Texas and federal decisions alike, so far as they have spoken, lead irresistibly, it seems to us, to the same conclusion, and that is to the effect that Wray will not be allowed to defeat the payment of this note.

In view of what we have already said, it is not necessary for us to pass upon the correctness of the following holding of the Court of Civil Appeals:

"Under the decisions of the federal courts, the action of the comptroller in giving the certificate above quoted is conclusive, in a collateral proceeding, that the increased capital has been paid in accordance with the statute. Latimer v. Bard (C. C.) 76 F. 537; Tillinghast v. Bailey (C. C.) 86 F. 46; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168."

For the reasons stated, we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both affirmed, as recommended by the Commission of Appeals.