## KNOX v. BROWN. (No. 403.)

Court of Civil Appeals of Texas. Eastland.
Feb. 17, 1928.

Rehearing Denied June 22, 1928.

1. **Frauds, statute of** ⊂⊃56(4)—**Mortgages** ⊂⊃ 37(2)—**Parol evidence is admissible to show deed absolute on its face was intended as mortgage; statute of frauds not being applicable.**

Parol evidence is admissible to show that deed and bill of sale absolute on their face were in fact intended as a mortgage, and attempt so to vary legal effect of deed is not within statute of frauds.

### On Rehearing.

2. **Mortgages** ⊂⊃36—**Grantor under deed absolute on its face has burden to prove instrument was mortgage only.**

Grantor under deed absolute on its face has burden of proof to show that deed was in fact only a mortgage.

3. **Mortgages** ⊂⊃38(1, 2)—**Proof must be clear and strong to show deed absolute on its face is mortgage, and testimony based on conclusion or possible inferences is insufficient.**

Burden of proof to show that deed absolute on its face is mortgage is not discharged by testimony consisting of conclusions, or of possible inferences, but parol evidence that instrument was given as security must be clear and certain.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Mortgages ⬤⟿39—Evidence held insufficient to make issue for jury as to whether deed and bill of sale absolute on their face constituted mortgage.**

Evidence *held* insufficient to make issue of fact for jury as to whether deed and bill of sale absolute on their face were in fact given as mortgage, there being no showing that there was a debt which the instruments were given to secure.

**5. Appeal and error ⬤⟿854(2)—Judgment of trial court, if correct, should not be disturbed, though rendered on incorrect theory.**

Where judgment of trial court was in fact correct, reviewing court is under no duty to disturb it, though it was rendered on an incorrect theory.

Appeal from District Court, Taylor County; M. S. Long, Judge.

Suit by C. B. Brown against J. B. Knox. Judgment for plaintiff, and defendant appeals. Affirmed.

J. W. Moffett and Lee R. York, both of Abilene, for appellant.

Thomas, Pope & Shapard, of Anson, Chas. E. Coombes, of Stamford, and Black & Graves, of Austin, for appellee.

FUNDERBURK, J. The subject-matter of this suit consists of a claim of ownership on the part of appellee of certain ranch lands, and a denial of such claim on the part of appellant, based on the contention that a particular deed, bill of sale, and option agreement, which on their face purport to convey from appellant to appellee the said lands and cattle on the ranch, are in fact but a mortgage. An alternative claim of appellant is that, if the said instruments are conveyances, he had the option to repurchase the land and cattle on or before a given date by paying a stipulated amount; that he had elected to repurchase within such time, and had paid all or a part of the amount necessary to repurchase or redeem; and, if not all, that he had made timely tender or offer to pay any balance remaining, which had been refused.

A statement of the case on the first appeal will be found in the opinion of the Court of Civil Appeals at El Paso, 261 S. W. 791, and also in the opinion of the Commission of Appeals, 277 S. W. 91, and 619. The case came to this court on a second appeal, but it appears that the opinion has not been published.

Judgment of the trial court was for appellee. The case was tried by a jury, to whom the court submitted the case on special issues. Of the special issues submitted, those, with the answers thereto, that are deemed pertinent to the questions presented for our determination, are as follows:

Question No. 7: "Was there a full accounting and settlement of all partnership expenses and matters by and between C. B. Brown and J. B. Knox, at the time of the execution of the deed and bill of sale in December, 1921? Answer yes or no."

"Yes."

Question No. 8: "Was said deed and bill of sale executed by J. B. Knox and wife to C. B. Brown, in December, 1921, intended by said parties as a mortgage to secure the said sum of $30,213.50 indebtedness paid off or assumed by Brown for Knox? Answer yes or no."

"Can't agree."

Question No. 11: "Did the plaintiff, C. B. Brown, on or about June 1, 1922, purchase from the defendant, J. B. Knox, his equity, if any, right or claim, if any, to redeem or repurchase a one-half interest in the cattle for the sum of $26,625? Answer yes or no."

"No."

If you have answered question No. 8 in the negative, then you will answer the following:

Question No. 17: "Was it the intention of the parties, at the time of the execution and delivery of the deed, bill of sale, and option contract of December 20, 1921, that Brown should acquire title to land described in the deed and to the cattle described in the bill of sale, subject to the right of Knox to repurchase the same on the terms provided in said option contract? Answer yes or no."

"Yes."

Question No. 18: "After a full accounting between J. B. Knox and C. B. Brown, from the date of their partnership up to December 20th, 1921, did J. B. Knox owe C. B. Brown upon said accounting any sum of money? Answer yes or no."

"No."

Notwithstanding the failure of the jury to agree upon an answer to special issue No. 8, the trial court gave judgment for appellee. The judgment recites that same is predicated upon the jury's findings upon special issues Nos. 7, 11, and 17, and findings in appellee's favor of all other issues by the court. It is the position of appellant that, because of the failure of the jury to agree upon an answer to special issue No. 8, the court should have declined to accept the verdict and have declared a mistrial.

[1] Appellee by his eleventh proposition contends that, the deed, bill of sale, and option contract being in their nature contractual, and reflecting a complete written contract between the parties, an attempt to vary or modify their legal effect by an alleged oral understanding is within the statute of frauds; hence there was no legal evidence authorizing a verdict and judgment converting the deed into a mortgage.

Alternative to the claim that the instruments could not be shown by parol evidence to be a mortgage, appellee asserts a number of propositions by which in varying forms he seeks to show that special issue No. 8, as given, was not a proper submission of the question to be determined by the jury, and, being a defensive matter, and for such reason imposing upon appellee no duty with reference to same, the appellant, having failed to

formulate and request submission of a proper issue, cannot be heard to complain of the failure of the jury to answer same, especially in view of the fact that special issue No. 17 did properly elicit the jury's finding against appellant and in favor of appellee on the very question attempted to be submitted in special issue No. 8.

We construe the decision of this court upon the former appeal to have determined against appellee the question of appellant's right to show, if he can do so, by parol evidence, that the deed, bill of sale, and option contract were in fact intended as a mortgage. Since the opinion by Chief Justice Pannill appears not to have been published, we quote from same on this point as follows:

"Attention is called to the decision in Ruffier v. Womack, 30 Tex. 332, where, upon contracts almost identical with the ones under consideration, the Supreme Court held that parol evidence was admissible to show that the debt was not extinguished by the transaction, and, if not, the law converted the instruments into a mere security for the debt. This is the leading case on the subject, and has been consistently followed in all later cases dealing with the question. Holmes v. Tennant (Tex. Com. App.) 231 S. W. 313."

We therefore overrule appellee's eleventh proposition. We do not think that the question of whether or not special issue No. 8 was properly stated is of any importance in considering the matters we are to pass upon. It is certain that by that issue the court sought the jury's finding on a matter constituting an issue made by both the pleadings and the evidence. We are not called upon to review any error of the court in formulating and submitting that issue. We have only to consider whether the jury made a determinative finding of all the issues, including the mortgage issue. If such was the case, we see no good reason why the judgment should not stand.

Appellee insists very forcefully that the submission of special issue No. 17 and the jury's finding thereon determined the mortgage issue; that especially is such the case when same is taken in connection with other findings. Just here, may we observe, it is interesting to note that the appellant and appellee each made the same objection to the court's action in submitting special issue No. 17 to the jury, which objection was that, if the jury answered special issue No. 8 in the negative (same being the only condition under which the jury was directed to answer No. 17 at all), the finding called for in said issue No. 17 was thereby made a question of law. If a question of law, there can be no argument, of course, but that same was to be determined by the court, and not the jury. Both appellant and appellee now agree that special issues No. 8 and No. 17 relate to the same subject-matter. In this we concur. Why, then, could the jury reach an agreement as to an answer to No. 17, and disagree as to No. 8?

We can conceive of no reason why this should have been the case, if the jury understood both questions. We are forced to the conclusion that one or both of the questions were misunderstood.

Appellant insists that the jury were confused as to the meaning of special issue No. 17, and appellee is just as certain that the confusion existed as to No. 8. Were we to attempt to decide which issue the jury understood, and which they failed to understand, it would be a mere speculation. Regardless of any criticism that may justly be made of the issue upon which the jury could not agree, there seems to us to exist very good reasons to suspect that the jury did not understand issue No. 17. It is, we think, susceptible of the meaning that it did not seek a finding as to whether title or no title was acquired by Brown (which title was described as one "subject to the right of Knox to repurchase, etc."), but, on the contrary, that the question called for a finding as to whether the title acquired by Brown by virtue of the written instruments (whether they were conveyances or a mortgage) was subject, or was not subject, to the right of Knox to repurchase. We conclude there was no certain finding on the mortgage issue. A predetermination of this issue is essential to the validity of any judgment that may be rendered on the pleadings and evidence in the case.

We think we may accurately state the rule to be that, when a material issue is submitted to a jury in two or more forms as separate special issues, a failure of the jury to agree upon an answer to one, while at the same time answering the others, is such evidence of mistake as to amount to no finding at all upon the issue. Denison v. Brown (Tex. Civ. App.) 172 S. W. 725. The result is the same in such case as in one where there are contradictory findings. See Stoker v. Fugitt (Tex. Civ. App.) 102 S. W. 743; Humble Oil Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528.

The jury's findings in answer to special issues Nos. 7 and 18 afford, perhaps, a better support for the judgment than No. 17; but they too, come within the rule above stated, and afford good illustrations of its soundness. Special issue No. 7 may have been understood by the jury as employing the term "settlement" in the sense of payment; but it does not necessarily have any such meaning, and we ourselves are in considerable doubt as to the sense in which the word is here used. Special issue No. 18, if given its correct meaning, as we understand it, is contrary to all the evidence in the case. All parties agree that, if there was an accounting on December 20, 1921, the result of such accounting showed that Knox owed Brown $30,213.50. The question was: Did Knox make the deed and bill of sale to secure payment of said sum, or did he pay off and discharge same by conveying the land and cattle? If the issue intend-

ed to call for a finding as to the existence or not of an indebtedness after the instruments were executed and delivered, then it was not so formulated as to make such purpose clear. The jury may or may not have so understood it.

By what we have said we do not wish to be understood as expressing unqualified approval of special issue No. 8 as given by the court. It seems to us that it is, at least, subject to the criticism that the term "mortgage" should have been defined or explained for the guidance of the jury. While we are not sure that it is subject to the criticism so strenuously urged by appellee, namely, that it assumed the existence of an indebtedness, it appears to be a little ambiguous in this respect, and may have been so understood by the jury. Upon another trial the court should exercise great care to avoid particularly the things mentioned.

Appellant by his thirteenth proposition urges that the verdict of the jury in answer to special issue No. 7 is against the weight and great preponderance of the testimony, and the trial court materially erred in not setting the judgment aside and granting a new trial. We have already shown how the jury may have misunderstood special issue No. 7, and at any rate we are not prepared to hold that there was no evidence justifying the submission of the issue, and we accordingly overrule the proposition.

We do not deem it necessary, in view of the disposition that must be made of the case, to go into consideration of appellant's fourteenth proposition, and his propositions 15 to 18, inclusive. We are inclined to the view that appellee's objection to the consideration of same is good, on the ground that they are multifarious and too general to require consideration.

For the reasons given above, the case is reversed and remanded to the trial court for another trial.

### On Rehearing.

[2, 3] Upon motion for rehearing appellee, Brown, insists with great earnestness that the mortgage issue was conclusively found by the jury in his favor in their answers to questions other than special issue No. 8, which the jury did not answer, because they could not agree. Our attention is called to an incorrect statement we made in the original opinion to the effect that all parties agreed that, if there was an accounting on December 20, 1921, it showed that Knox owed Brown $30,213.50. The statement was made by way of illustrating the inconclusiveness of the jury's findings upon other issues. It would have been correct to have said that such accounting showed that Knox owed Brown $7,-244.44, which, for the purposes for which the statement was made, would have served equally as well. We are still convinced that, if the evidence made the mortgage issue a

question of fact, there was not such a certain and conclusive finding on said issue in favor of Brown as would warrant us in affirming the judgment.

Our original opinion was based upon the assumption that there was some evidence that the deed, bill of sale, and option contract together were in fact but a mortgage. The endeavor of Brown to show that such issue was concluded by the jury's answers to other issues than the one upon which they failed to agree led us into this assumption. The statement of the evidence made to support this argument has suggested the possibility that there was no evidence on the mortgage question sufficient to raise an issue of fact to be submitted to the jury. Upon an examination of the evidence with this in mind, we have reached the conclusion that such is the case. The burden of proof as to the mortgage issue was upon Knox. This burden was not to be discharged by testimony consisting of conclusions or of possible, but not necessary, inferences. In Howard v. Zimpelman (Tex. Sup.) 14 S. W. 59, Judge Gaines says:

"The proposition that, in order to ingraft a parol trust upon a written instrument, it must be proved with clearness and certainty, was announced in this court at an early day, and has since been substantially reiterated in very numerous decisions [citing many authorities in support of this statement]."

In the same opinion this language appears:

"It is against the policy of the law that a written instrument should be shown by parol testimony to have an effect different from that which its terms import, except upon very strong proof."

In the case of Miller v. Yturria, 69 Tex. 549, 7 S. W. 206, the same learned judge uses this language:

"In view of the very explicit statement in the agreement itself that it was a conditional sale, and not a mortgage, it would require clear evidence to the contrary to hold it a mortgage."

And:

"It has been held by this court that, in order to establish that an absolute deed is intended as a mortgage, it must be proved with clearness and certainty, * * * and we think this rule applies also to an instrument which clearly shows upon its face a conditional sale."

The facts in the above case are strikingly similar to the facts in this case. The conclusion of the vendor in that case that the instrument was a mortgage was given no weight by the court, but the controlling reason cited by the court for holding that the instrument in that case was not a mortgage is stated in this language:

"She, it is true, calls the instrument a mortgage; but this was evidently her own conclusion. She does not testify that the antecedent debts were not fully extinguished; and the fact

of the continued existence of a debt to be secured is held to be the true test of a mortgage."

The same principles were recognized and applied in Rotan Grocery Co. v. Turner, 46 Tex. Civ. App. 534, 102 S. W. 932; Goodbar v. Bloom, 43 Tex. Civ. App. 434, 96 S. W. 657; El Paso Sash & Door Co. v. Crawford (Tex. Civ. App.) 283 S. W. 232. The case last above cited is also reported in 115 Tex. 508, 283 S. W. 754 (Tex. Com. App.) 288 S. W. 171, and (Tex. Civ. App.) 292 S. W. 924.

[4] With this conception of the duty resting upon Knox, it will next be noticed that the mortgage issue tendered by him in his pleadings was to the effect that on December 20, 1922, he executed and delivered the several instruments as a mortgage to secure a debt at the same time created in the sum of $30,213.50, and which it was agreed was due and payable on or before June 1, 1923. The burden of Knox to show by clear and strong proof that the instruments were in fact a mortgage included the burden of showing that such mortgage existed by reason of the instruments being given to secure the indebtedness as alleged and which was due and payable as alleged; the indispensable fact being the existence of the debt. Knox, after testifying to an agreement with Brown for the latter to take up a note for $3,000 due by Knox to the First State Bank of Trent; a note for $9,969.06 due by him to the Anson Bank, and two notes, aggregating $7,244.44 due by Knox to Brown, and that Brown was to execute a note to Knox in the sum of $10,000, to be used as collateral security for a note in the sum of about $8,000 due by Knox to a bank in Abilene, then said:

"After we agreed on this, we agreed then that I would give the bill of sale to the cattle and the deed, and that he would give me an instrument back, we called it, in the form of an option, to show that this was not a *real* sale. That was our idea at that time; to show that this was not a *real* sale. It was just for the purpose of securing these items that Mr. Brown was to take up for me. * * * I stated that under the agreement between Mr. Brown and me that I was to have a certain time in which to pay this amount which I *claim* I owed Mr. Brown. I had up until June 1, 1923, to pay that amount."

If there was any evidence raising the mortgage issue, such evidence must be found in the preceding quotation. It was undisputed that up to the time of the execution of the instruments Knox owed Brown $7,244.44 upon two certain notes, and it is equally clear that he owed him no other amount. There was no claim that the deed, bill of sale, and option contract were intended to secure payment of this note of $7,244.44. On the contrary, according to Knox, this was one of the items of indebtedness Brown agreed to take up, which, since it was one owing to Brown, would thereby be discharged. The instruments then could not possibly constitute a mortgage, unless it was true that on December 20, 1921, Knox became indebted to Brown in the sum of $30,213.50, which was about $22,000 more than he had theretofore owed him. The mortgage that was alleged to exist could not do so, unless it was also true that there was an agreement on the part of Knox to pay the indebtedness on or before June 1, 1923. To meet this requirement Knox says the option agreement was to show that the transaction was not a *real* sale. But that states no fact to show it was a mortgage. This is but the statement of a conclusion. That statement might apply to a conditional sale. Again he says:

"It was just for the purpose of securing these items that Mr. Brown was to take up for me."

This is not the statement of a fact, but of a conclusion or inference. Besides the purpose testified about would have been served just as efficiently by a sale and option to repurchase. The testimony, therefore, is without evidentiary value. Lastly, Knox says that he was to have until June 1, 1923, to pay the amount. Here he far more accurately describes a right to repurchase than an unconditional obligation to pay a debt on or before a certain time. To attempt to construe this statement as a promise or obligation to pay the amount on or before June 1, 1923, would be doing violence to the plain import of his words. It will be observed that no witness testified in substance or effect that Knox agreed that, in consideration of Brown's taking up the several items of indebtedness, which Knox owed other parties, he agreed to pay Brown the amount thereof. There is no mention of any interest payment; a very significant omission. $10,000 of the amount of the indebtedness which Knox, by his pleadings, claims he owed Brown, was represented by a note in which Brown was maker and Knox payee. The attempted explanation of this rather strange fact is wholly discredited by the undisputed fact that Knox negotiated the note and Brown paid it.

In holding that there was no evidence to show that the several instruments constitute a mortgage, we employ the term "no evidence" in the sense explained by Judge Denman in Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. We do not hold that there is no "slight testimony," but that its probative force is so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established. It seems to us to come within the rule that there is no room for ordinary minds to differ as to the conclusion to be drawn from the testimony, which is that the instruments were what on their face they purport to be.

[5] If this be true, then the judgment of the trial court, whether rendered on exactly the correct theory or not, was in fact correct. This being the case, we are under no duty to disturb it. Galveston v. Morton, 58 Tex. 409; Newton v. Easterwood (Tex. Civ. App.) 154 S.

W. 646; General Bonding & Casualty Co. v. McCurdy (Tex. Civ. App.) 183 S. W. 796.

Because of the conclusions above announced, the motion for rehearing is granted, the judgment heretofore rendered, reversing and remanding the case is set aside, and the judgment of the trial court is in all things affirmed.