## ROTAN GROCERY COMPANY v. C. J. TURNER ET UX.

### Decided May 25, 1907.

**1.—Conditional Sale—Mortgage—Distinction.**

In determining whether a conveyance absolute on its face, with a written agreement to repurchase signed by the parties, is a mortgage or a conditional sale inquiry must be made whether the relation of creditor and debtor continued to exist. If it did, it is a mortgage, otherwise a conditional sale.

**2.—Same—Agreement to Resell.**

If there was in fact a sale, an agreement by the purchaser to resell the property to the grantor within a limited time, at the same price, does not convert it into a mortgage.

**3.—Same—Degree of Proof.**

In order to establish that an absolute deed is in fact a mortgage, it must be proved with clearness and certainty.

**4.—Same—Fact Case.**

In a suit by the husband and wife to recover a business homestead on the ground that a deed to the same was intended as a mortgage, evidence considered, and held insufficient to support a verdict in plaintiff's favor.

Appeal form the District Court of Freestone County. Tried below before Hon. L. B. Cobb.

*W. B. Boyd, O. C. Kervin* and *Prendergast & Williamson,* for appellant.—An absolute deed delivered in payment of a debt is not converted into a mortgage merely because the grantee therein gives a contemporaneous stipulation binding him to reconvey, on being reimbursed the amount of the debt and interest thereon, but such arrangement is a conditional sale. Goodbar & Co. v. Bloom, 16 Texas Ct. Rep., 770; Jones on Mortgages, sec. 258, 163, 265, 267; Alstin v. Cundiff, 52 Texas, 453; Miller v. Yturria, 69 Texas, 549; Brewster v. Davis, 56 Texas, 479; Herring v. White, 6 Texas Civ. App., 251; Hay v. Emerson, 87 S. W. Rep., 1027; Gerhardt

v. Tucker, 85 S. W. Rep., 552; Kirby v. National Loan & Investment Co., 22 Texas Civ. App., 261.

The husband has the right to abandon the business homestead without the consent of the wife, and such abandonment causes said property to lose its character as an exemption.    Inge v. Cain, 65 Texas, 81; Wynne v. Hudson, 66 Texas, 10; Shryock v. Latimer, 57 Texas, 674.

The claim to the exemption of the business homestead rests in the husband, and his failure to claim such exemption in his bankruptcy proceedings, is a waiver of the exemption, and the title to such property upon his adjudication in bankruptcy passes to his trustee.    Bankruptcy Act, 1898, sec. 6, sec. 47a (11), General Order 17; Collier on Bankruptcy, 4th ed., pp. 79, 80, 81; In re Mayer, 108 Fed. Rep., 599.

The business homestead transferred by a bankrupt for the purpose of perpetrating a fraud upon his creditors and preventing same from being administered and distributed among his creditors in his bankruptcy proceedings, can not be recovered by him after his bankruptcy, as he has abandoned such property as his homestead and waived his right to it as an exemption, and it is subject to the payment of his debts.    Taylor v. Ferguson, 87 Texas, 1; Cox v. Shropshire, 25 Texas, 125; Baines v. Baker, 60 Texas, 141; Beard v. Blum, 64 Texas, 62; Bell Hdw. Co. v. Riddle, 72 S. W. Rep., 613.

*W. B. Moses* and *Daviss & Williford,* for appellee.

TALBOT, Associate Justice.—C. J. Turner and wife brought this suit against The Rotan Grocery Company to recover a lot of ground with a brick store house thereon, situated in the town of Wortham, Freestone County, Texas.   It is alleged, in substance, among other things, that, on June 1, 1902, the said C. J. Turner was the head of a family residing in the town of Wortham, engaged in the mercantile business and using and occupying said brick building as his business homestead; that the said Rotan Grocery Company was a private corporation engaged in the wholesale grocery business in the City of Waco, Texas, and the said C. J. Turner was indebted to it in a considerable sum of money; that on June 1, 1902, Turner executed to his book-keeper, G. G. Stallings, a deed to said store house, the deed reciting, as a consideration therefor, three promissory notes of Stallings of a thousand dollars each and that a vendor's lien was reserved on the store house and lot to secure the payment of said notes; that the appellee, Nannie Turner, wife of C. J. Turner, did not join in the execution of said deed at that time, and the same was not acknowledged by C. J. Turner; that as previously agreed, said notes were transferred and delivered to The Rotan Grocery Company as collateral security for Turner's indebtedness to it; that The Rotan Grocery Company knew that the property was the business homestead of Turner and wife, and that the transaction created no lien upon it and no liability on the part of Stallings for the payment

of said notes; that on or about the 1st day of October, 1903, C. J. Turner, by reason of crop failures, became financially embarrassed but was still using and occupying the said store house as his business homestead; that The Rotan Grocery Company knowing Turner's financial condition and being one of his creditors, offered to assist him in the straightening up of his affairs; that by promising to buy in his stock of merchandise, notes and accounts at the bankrupt sale and to sell them back to him and to reconvey to him the property in controversy, as soon as he received his discharge in bankruptcy, the Rotan Grocery Company induced the said Turner to acknowledge the deed to Stallings and his said wife, Nannie Turner, to sign and acknowledge said deed; that immediately upon the execution and delivery of the deed to Stallings, the said Stallings executed and delivered to the Rotan Grocery Company a deed to said property. That it was definitely understood and positively agreed that the deed from Turner and wife to Stallings and the deed from Stallings to the Rotan Grocery Company purporting to convey the property in controversy "should be for no other purpose and have no other effect than that of security to defendant (Rotan Grocery Company) for plaintiff C. J. Turner's said indebtedness." It was further alleged that after the filing of the said Turner's petition in bankruptcy the Rotan Grocery Company procured the sale of the assets of his estate and became the purchaser thereat of the stock of merchandise and has failed and refused to sell the same to the said Turner, and has also failed and refused to reconvey to him the property in controversy, as had been agreed upon.

The Rotan Grocery Company pleaded a general denial, not guilty, and specially, in substance among other things, that, on the first day of October, 1903, Turner and his wife abandoned the property sued for as a business homestead, and on said day for a valuable consideration, sold and conveyed the same to G. G. Stallings and executed a proper conveyance therefor; that said conveyance was executed to ratify and confirm the sale of said property which was made on June 1, 1902, and was, as it appeared upon its face to be, an absolute conveyance of the title of the property therein described and not a mortgage; that such also was the nature of the deed from Stallings to it.

The trial court instructed the jury that if the intent and agreement of the plaintiff and defendant in the execution of said deeds was merely to create a lien upon the property to secure the debt of C. J. Turner to defendant to find for the plaintiffs, otherwise to find for the defendant. From a verdict and judgment in favor of the plaintiffs this appeal is prosecuted.

Appellant contends that the evidence adduced was insufficient to authorize the jury's finding that the deeds under which it claims were given as a mortgage to secure the payment of Turner's indebtedness and not as an absolute or conditional sale. This contention presents the controlling question on the appeal and must, we think, be sustained. It was shown that the appellee Turner, both in June, 1902, and in October, 1903, was the head of a family, a merchant and using the property in controversy as his place of business, that notwithstanding

at both of said dates he was largely indebted to appellant, and about June 1, 1902, as alleged, executed a deed to Stallings purporting to convey to him said property, reciting as a consideration therefor, three promissory notes of the said Stallings of one thousand dollars each, and that a vendor's lien was reserved on the property to secure the payment of said notes, and notwithstanding two of said notes were transferred and delivered by Turner to appellant as collateral security for his indebtedness to it, the deed to Stallings was simply signed by Turner and not acknowledged by him at that time; nor was it signed or acknowledged by Mrs. Turner. In this attitude of the transaction the deed was ineffectual for any purpose and the notes in the hands of appellant, whether they knew of the condition of the deed or not, were worthless, insofar as fixing a lien upon the property sued for is concerned, and could avail but little, if anything, in giving character to the subsequent transaction. When, however, Turner and his wife executed the said deed in October, 1903, and Stallings conveyed the property to appellant it acquired title to said property, unless this transaction was made with intent and agreement that, by the deed, appellant should acquire only a lien upon the property to secure the payment of Turner's debt to appellant.

That the testimony shown by the record does not warrant this conclusion seems clear. C. J. Turner testified that Rowe (who was the agent of appellant), "told me that if I would make them a good deed to this property that they (appellant) would deed this property back; that I could go into bankruptcy and after the bankruptcy matter was over, they would deed the property back to me and that they (appellant) would also buy the stock of goods and sell them back to me at 10 percent additional over the cost and then they would sell me the house back." In another place he says: "The deed to my business homestead was made to the Rotan Grocery Company and the understanding was, and the agreement was, that they would deed it back to me whenever they bought in those goods. The price they were to get for it was what they had agreed to give me, $2,000. They were to get the same as $2,000 when they sold the property back. They were going to sell it back to me. I was going to give them $2,000 for the business house. I guess they gave me credit for $2,000 when they got the deed from Stallings, but do not know. I did not get to look over their accounts." G. G. Stallings testified, that he executed the deed to appellant in cancellation of two of the notes mentioned in Turner's deed to him and the verbal agreement of appellant to take care of the other note; that Rowe told Turner appellant would deed him the house back but if there was any consideration mentioned for which it was to be deeded back it was not mentioned in his, Stallings', hearing. H. H. Shear testified that he was president of The Rotan Grocery Company, that Turner did not hesitate to execute the deed; that no promises were made him, Turner, at all, and Turner did not ask for anything; that the two notes held by appellant were cancelled and surrendered when the deed to Stallings was executed by Turner and wife. He further testified: "We considered the notes good but did not consider it any preference. It was the same collateral we formerly held, only in a different form. We were simply

getting our collateral in better shape." John F. Rowe, the agent and adjuster for appellant, testified: "I had no conversation whatever with Mr. Turner in reference to that building or a resale of it or a reconveyance of it to him. I did have a discussion in reference to the stock of merchandise. He was anxious to buy it back and he and I had discussed it with Mr. Shear. I told Mr. Turner that I would recommend selling it (the stock of merchandise), back if he would get up some security. He said he could not get the proper security for the stock of merchandise. He has never at any time proposed to buy that store house back from us. At the time of the conveyance and cancellation of the vendor's lien notes and agreement to take up the third, credit was given Mr. Turner on his account by The Rotan Grocery Company for $2,000."

This is practically all of the material evidence bearing upon the question, and the principles of law applicable are well settled. In the case of Alstin v. Cundiff, 52 Texas, 453, it is held that, "in determining whether a conveyance absolute on its face, with a written agreement to repurchase signed by the parties, is a mortgage or a conditional sale, reference must be had to the inquiry, whether the relation of creditor and debtor continues to exist. If it does it is a mortgage, otherwise a conditional sale." To the same effect are the cases of Miller v. Yturria, 69 Texas, 549, and Goodbar & Co. v. Bloom, 96 S. W. Rep., 657; and this is the test, whether the agreement to resell is written or verbal. Coe v. Cassidy, 6 Daly (N. Y.), 242. Mr. Jones in his work on Mortgages, says: "If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a certain time does not create a mortgage, but a conditional sale, and the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement. A debt either preexisting or created at the time, or contracted to be created, is an essential requisite of a mortgage. An absolute deed delivered in payment of a debt is not converted into a mortgage merely because the grantee therein gives a contemporaneous stipulation binding him to reconvey, on being reimbursed within an agreed period, an amount equal to the debt and interest thereon. If the conveyance extinguishes the debt, and the parties so intended, so that a plea of payment would bar an action thereon, the transaction will be held an absolute or conditional sale notwithstanding. And so if there was in fact a sale, an agreement by the purchaser to resell the property within a limited time, at the same price, does not convert it into a mortgage. But if the indebtedness be not cancelled, equity will regard the conveyance as a mortgage, whether the grantee so regards it or not. He can not at the same time hold the land absolutely and retain the right to enforce payment of the debt on account of which the conveyance is made. The test, therefore, in cases of this sort, by which to determine whether the conveyance is a sale or a mortgage, is found in the question whether the debt is discharged or not by the conveyance. If in the subsequent transaction of the parties there is no recognition in any way of the relation of debtor and creditor, and the vendee for

a considerable period holds possession without paying interest or rent, these facts go to show that there is only an agreement for purchase and not a mortgage."

In Moreland v. Barnhart, 44 Texas, 275, Miller v. Yturria, *supra,* and other cases in this State, it is distinctly held that, in order to establish that an absolute deed is intended as a mortgage, it must be proved with clearness and certainty. Manifestly, the proof before us is not of this character, nor does it show, in our opinion, with reasonable certainty that the intention of the parties was that the deeds here in question were to be held as a security for the payment of a debt owed by appellee Turner to appellant. The deeds were in form absolute conveyances and the extraneous testimony offered by appellees, which was contradicted by appellant, as shown by the record sent to this court, does no more than to establish a mere sale of the property sued for, in consideration of the extinguishment of $2,000 of C. J. Turner's indebtedness due by account to appellant, not merely the cancellation of the collateral notes, but in addition thereto, with a contract of repurchase by him for that amount of money. According to this testimony the relation of creditor and debtor did not continue to exist between Turner and appellant, as to this $2,000 of extinguished indebtedness, after the execution and delivery of said deeds in October, 1903, and the agreement of appellant, if any, to resell the property to appellee at a stated time, for $2,000 did not convert the absolute deeds into a mortgage. It follows that the judgment of the lower court must be reversed and, inasmuch as the record indicates to us that the case has not been fully developed, the case will be remanded for another trial, instead of judgment being rendered here for appellant.

No other reversible error is disclosed by the assignments. The court's charge was not upon the weight of the evidence. Nor do we think either of the special charges requested should have been given. If it can be said that the court's charge was not full enough in stating the issues the error was slight and one of omission, of which appellant can not complain in the absence of a requested charge supplying such omission.

For the reason stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*