WALKER et al. v. TAYLOR et al.†

(Court of Civil Appeals of Texas. San Antonio. Dec. 6, 1911. Rehearing Denied Jan. 10, 1912.)

1. MORTGAGES (§ 356*)—TRUST DEED—FORECLOSURE—POSTING OF NOTICE.

A foreclosure sale under a trust deed, in which the required notices of sale are prepared by the original trustee and his substituted trustee, signed by the substituted trustee, and posted, with the knowledge of the mortgagor, at the proper time and in the proper place, is valid, though the notices were not posted by the substitute himself.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1067; Dec. Dig. § 356.*]

2. MORTGAGES (§ 356*)—TRUST DEEDS—FORECLOSURE SALE—WAIVER.

Where the maker of a trust deed knew of the posting of notices of a foreclosure sale, was present at the sale, and approved it, he thereby, in the absence of fraud or collusion made the sale his own act, and waived any defects as to notice.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 356.*]

3. MORTGAGES (§ 369*)—FORECLOSURE SALE—SETTING ASIDE SALE—SECOND MORTGAGEE.

In the absence of fraud or collusion, and where the maker of a trust deed has, upon a foreclosure sale, waived any defect as to the notice intended primarily for his own benefit, a second mortgagee cannot attack the validity of the sale.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1096; Dec. Dig. § 369.*]

4. BANKRUPTCY (§ 140*)—TITLE ACQUIRED BY TRUSTEE.

A trustee in bankruptcy has no right to question a foreclosure sale under a trust deed, made by the bankrupt and his beneficiary in good faith and for a fair price, since he takes the property as it was in the hands of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

5. MORTGAGES (§ 356*)—SALE UNDER POWER—POSTING NOTICES—AGENT OF TRUSTEE.

A trustee in a trust deed, authorized to give notices of sale, may delegate the posting of notices to a subagent, since the act is purely ministerial, and involves no discretion or personal skill.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 356.*]

Appeal from District Court, Schleicher County; J. W. Timmins, Judge.

Action by Virginnie Taylor against William H. Walker and others for the recovery of lands, consolidated with actions by Walker and others against Virginnie Taylor and others to recover the same land and to foreclose a mortgage thereon, in which Edgar A. Demueless, trustee in bankruptcy of H. B. Spaulding, was made a party and claimant. Judgment for plaintiff Virginnie Taylor against all parties, and that the mortgage to Walker and another be canceled, and Walker, Demueless, trustee, and others appeal. Affirmed.

S. T. G. Smith, Silliman & Campbell, Cornell & Wardlaw, C. E. Dubois, W. H. Lipscomb, and Thos S. Meng, for appellants. Snodgrass & Dibrell, Wright & Wynn, and Virgil Rule, for appellees.

FLY, J. Virginnie Taylor sued William H. Walker, Alonzo Acuff, T. T. Tubbs, Marion Robinson, and Mrs. L. L. Carlisle to recover 40 tracts of land in Schleicher county; then in another suit, afterwards filed, William H. Walker and Alonzo Acuff sued Virginnie Taylor, H. B. Spaulding, J. G. McGannon, and G. H. Garland to recover the same land and to foreclose a mortgage on the same; then afterwards the same plaintiffs last named sued Virginnie Taylor, and a number of others, for the same purposes mentioned, and the three causes were consolidated. The contending parties claim the land from H. B. Spaulding, as a common source. It was alleged that H. B. Spaulding had been declared a bankrupt, and that Edgar A. Demueless was the trustee, and he was made a party, and claimed an interest in the land for the Spaulding estate. The cause was tried without a jury, and it was adjudged that Virginnie Taylor should recover the land as against all of the other claimants, and that a mortgage on the land given by H. B. Spaulding to W. H. Walker and Alonzo Acuff be canceled. This appeal was perfected by Edgar Demueless, trustee in bankruptcy, W. H. Walker, and the heirs of Alonzo Acuff, the latter-named person having died pending the suit. In addition to suing for the lands in question, appellants Walker and Acuff sought to recover an amount, alleged to be due them, which they paid, as indorsers of notes of J. G. McGannon, to the National Bank of Commerce, and a foreclosure of their mortgage on the lands in controversy, which they admitted was a second mortgage.

On October 26, 1901, H. B. Spaulding executed to J. F. McGannon, as trustee, his deed of trust upon the lands in controversy, and also certain personal property, to secure the payment of three notes, payable to the order of J. G. McGannon, one for $19,000, one for $13,000, and the third for $19,000, each bearing interest at 8 per cent. per annum, which was properly and duly recorded. The notes were not paid at maturity. On December 7, 1903, J. G. McGannon, *in writing*, appointed J. A. Whitten substitute trustee, which he was authorized to do by the deed of trust, in

---

the event that the trustee, J. F. McGannon, failed or refused or was unable to act. as trustee; that J. F. McGannon refused to act as trustee, and was unable, on account of his physical condition, to so act. On December 8, 1903, J. A. Whitten accepted the position of substitute trustee, and signed four notices of sale of the property covered by the deed of trust made by Spaulding, in which it was stated that the property would be sold to the highest bidder at the door of the courthouse of Schleicher county,· between the hours of 10 o'clock a. m. and 4 p. m., on January 5, 1904; the same being the first Tuesday in the month. The notices were regular and according to law in every respect, and they were posted, as required by law, at three public places in Schleicher county, one being at the courthouse door, and one of them being duly published in a newspaper of the county for more than 20 days before the day of sale, and on January 5, 1904, about 2 o'clock p. m., the lands in ·controversy, as well as the personal property, were sold by J. A. Whitten at public auction, and the property was bought by J. G. McGannon, the beneficiary in the deed of trust, for the sum of $50,000, that being the highest bid, and the same being the fair market value of the property, and on the same day a warranty deed was executed by the substitute trustee to J. G. McGannon for the property in controversy, which was duly acknowledged and filed for record on same date. On April 12, 1904, J. G. McGannon conveyed the land to J. F. Taylor for $10,000 in cash and three notes for $10,000 each. Taylor paid the first note that became due, and he died on August 26, 1906. After his death his surviving widow, Virginnie Taylor, on October 26, 1906, paid the other two notes, and a release of the vendor's lien was given by McGannon, which was duly recorded. Walker and Acuff claim through a deed of trust on the land, given by Spaulding on February 25, 1903, to secure them as indorsers on three notes, signed by the Spaulding Mercantile Company and H. B. Spaulding, two being for $25,000 each, one due November 15, 1903, and the other December 15, 1903, and the third for $5,000, due January 1, 1904, all of date February 25, 1903, and all payable to the National Bank of Commerce of St. Louis. Walker paid the two notes for $25,000 each to the bank, and the claim of 'Walker and Acuff is barred by limitations. We approve the findings of fact of the trial judge.

It is said in the brief of Walker and Acuff: "We make the statement here that the validity of the sale by J. A. Whitten is questioned. If the sale by him should be held valid, and it should be held that he had authority to make the sale, then this appellant admits that the judgment of the lower court should be affirmed." Under that admission, it will be unnecessary to discuss the various as-signments of error, which attempt to raise other points, not involved in the decision of this case.

[1] It is contended under the first, second, third, fourth, fifth, and sixth assignments of error that there was no legal posting of the notices, because they were not actually posted by J. A. Whitten, the substitute trustee. The evidence showed that the four notices were signed by J. A. Whitten, as substitute trustee, and he intrusted the posting of them to James Garrett, who actually posted one at the courthouse, one at the post office in Eldorado, the county seat, on December 8, 1903, and one on the public road leading from Eldorado, Schleicher county, to Sonora, in Sutton county, on December 9, 1903, and they were so posted for more than 20 days before the sale; and the fourth notice was published in the Eldorado Sun, a weekly newspaper published in Eldorado, Schleicher county, for more than 20 days before the sale.

As authority for the proposition that a sale under a trust deed is void, where it appears that the notices of sale were not actually posted by the hands of the trustee, although it appears that they were actually posted by an agent of the trustee in the manner and at the places required by law, the cases of Fuller v. O'Neil, 69 Tex. 349, 6 S. W. 181, 5 Am. St. Rep. 59, and Meisner v. Taylor, 120 S. W. 1014, are cited by appellants. In the first case it was held that, where an agent of the trustee makes the sale, there being nothing in the deed of trust permitting such delegation of power, no title passes. In that case the whole office of trustee was placed in the hands of an .agent, and he was allowed to exercise a discretion in regard to obtaining and accepting bids which it was never contemplated by the maker of the instrument should be exercised by any one but the trustee. In this case the only matter committed to the hands of an agent was the posting of the notices at three public places, and it was shown by the uncontradicted evidence that they were so posted, whether in the presence of the trustee or not would not matter. If it would be an illegal act if the notices were posted in the absence of the trustee, it would be illegal if he were present, for the act in the one instance would be that of the trustee as much so as it would be in the other; and it would seem unreasonable to require that the trustee should actually perform the manual labor necessary in putting up the required notices. The actual work would require no discretion and the exercise of very little intelligence. The law would be satisfied by proof that the notices were at the proper time posted in the proper places, by authority of the trustee.

[2-4] In the case of Meisner v. Taylor, it appeared that one notice was posted at the courthouse door by the trustee, and that the

others were given by him to the sheriff to be posted; but the evidence did not show that they were ever posted, and the maker of the trust deed, who brought the suit to set aside the sale, had no notice of the sale. After discussing the effect of a clause in the trust deed, giving prima facie effect to the acts of the trustee, but did not include the acts of any one else, the court said: "In the absence of such a provision in the deed of trust, it would have been necessary for the party asserting title under the instrument to have shown that the notices were posted." That is exactly what was done in this case. The notices were posted with the knowledge and consent of the trustee, and also with the knowledge and at the desire of McGannon, the beneficiary, and Spaulding, the maker of the trust deed, and both were present at the sale, and Spaulding expressed perfect satisfaction with the sale. McGannon and Spaulding were with Garrett when he posted the notice at the post office, and they went with him to the publisher, and McGannon paid the publisher's bill. The notice was duly published. The other notice was posted in a public place, with the knowledge and advice of the maker and beneficiary of the deed of trust. There was no evidence of collusion between the maker of the trust deed (Spaulding) and the beneficiary (McGannon), and both were fully satisfied with every step in the proceeding. Spaulding made the sale his act by overlooking the posting of the notices, and by being present at the sale and approving it. Notices of the sale were primarily for his benefit, and they were posted in the manner that he desired. We do not see what right a second mortgagee has to attack the validity of the sale under the circumstances of this case. Hess v. Dean, 66 Tex. 663, 2 S. W. 727; Morris v. Hastings, 70 Tex. 26, 7 S. W. 649, 8 Am. St. Rep. 570. Certainly the trustee in bankruptcy had no right to question the sale. He took the property as it was in the hands of the bankrupt. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845.

How could the fact that the notices were actually nailed to the door of the courthouse, to the post office, and to the gate on the public road by Garrett, instead of Whitten, in any manner have affected the interests of appellants? The mortgagor, mortgagee, and trustee were satisfied, and no one else had the right to complain. The strictness required in following the terms of the power granted by the deed of trust is to protect the property of the mortgagor, and when he is satisfied no one else can with reason complain. There is no charge of fraud and collusion between the maker of the deed of trust and the beneficiary; there is no contention that the property did not bring a fair value; but the naked proposition is that notices of sale under a trust deed must be put up by the hands of the trustee, and if the unhallowed

hands of some other person, with the knowledge and consent of the trustee, posts the notices, even under the supervision of the mortgagor and beneficiary, the sale is invalid. If it is so held in Meisner v. Taylor, it was pure obiter dictum, as it was not shown in that case that the notices were posted by any one, and it was unnecessary to deliver any opinion on the question under consideration.

[5] The rule that is applied in such cases is that, where, in the execution of the authority, an act is to be performed which is of a purely mechanical, ministerial, or executive nature, involving no elements of judgment, discretion, or personal skill, the power to delegate the performance of it to a subagent may be implied. Mechem on Agency, § 193. The trustee signed the notices and determined upon the propriety and necessity of the sale, and permitted Garrett to perform the mechanical act of nailing the notices to doors and posts; one of the places being designated by law; the others being designated by the owner of the property to be sold and the beneficiary in the trust. The interests of the owner of the property were thoroughly protected; the sale was, to all intents and purposes, under his direction; the notices were posted as he desired; he voluntarily delivered the property to the beneficiary after the sale; and creditors with a junior mortgage have no ground for complaint, even though, as contended by appellants, they did not know where the notices were placed. They were placed in three public places, and that was sufficient.

The trust deed required that the trustee sell the property, in case of default in payment of the notes, after having "advertised the time, terms, place and conditions of such sale in the manner and for the length of time as required by law for sales under execution." Now, in sales under execution, it is the rule that an objection to the form of a notice can only be made by the defendant in execution, and the notice being for his benefit can be waived by him. If the waiver be fraudulent and be prejudicial to creditors, or if the sale is procured by fraud of the judgment creditor, they may possibly, in a direct proceeding, vacate the sale, but no collateral attack is permitted. Freeman, Ex. § 286; Stone v. Day, 69 Tex. 13, 5 S. W. 642, 5 Am. St. Rep. 17; Morris v. Hastings, 70 Tex. 26, 7 S. W. 649, 8 Am. St. Rep. 570. We see no reason why a sale that is made in good faith by a trustee, under the direction and supervision of the maker and beneficiary, fairly and without fraud or concealment, and a fair price obtained for the property, should be open to attack by creditors. In the two cases cited by appellants, the mortgagor was seeking to set aside the sale. In the case of Fuller v. O'Neil, the decision emphasized that the sale should have been made by the trustee, because the grantor of the power had reposed confidence in the trustee, and,

perhaps, the agent selected by the trustee to attend to the sale was not one to whom the grantor would have intrusted it. But a different case arises when the sale is made with the consent and approval of the grantor of the power, and under his direct supervision, and he is in every respect satisfied with it. It cannot for a moment be claimed with any show of reason that, under the circumstances, Spaulding could maintain a suit to set aside the sale, and, in the absence of proof of fraud and collusion between Spaulding and McGannon in making the sale, other creditors cannot be heard to attack the sale. The matter stands as though Spaulding had sold the chattel to McGannon in satisfaction of the debt, which he had the right to do.

The assignments of error raising other questions become unimportant, and we conclude the judgment should be affirmed.