**BOOKHOUT et al. v. McGEORGE.**

**No. 11507.**

Court of Civil Appeals of Texas. Dallas.

Sept. 30, 1933.

Rehearing Denied Nov. 25, 1933.

514

Read, Lowrance & Bates and Thompson, Knight, Baker & Harris, all of Dallas, for plaintiffs in error.

Marion S. Church and Prentice Wilson, both of Dallas, for defendant in error.

LOONEY, Justice.

Claiming to be the owners of the oil, gas, and other minerals in and under 163½ acres of land in Gregg county, Tex., appellants brought this suit against Percy McGeorge, appellee, to cancel and remove, as a cloud, from their title, certain instruments under which appellee claims.

Robert Davis (a colored man) is the common source; the claim of appellants being based upon two mineral deeds, executed by Davis to J. J. Bookhout and A. S. Holifield, each conveying one-half interest in the oil, gas, and other minerals in the lands; the first dated July 20, 1921, recorded July 26, 1921; the second dated August 18, 1921, and recorded May 26, 1923. The interest of J. J. Bookhout, now deceased, is held by J. R. Bookhout, brother and partner, and by Mrs. Frances Ross Bookhout, widow, and Mary Frances and John Bookhout, minor children of deceased; these and A. S. Holifield were plaintiffs below.

Appellants specially pleaded their title, and set out at length the three separate chains under which appellee asserted title; the first being a deed from the Oklahoma Farm Mortgage Company, under a trustee's deed to the company dated March 17, 1921, recorded March 24, 1921, made by virtue of the power of sale in a second deed of trust dated April 26, 1919, recorded May 6, 1919, executed by Robert Davis (common source) to Andrew Kingkade, trustee, securing an indebtedness to the Oklahoma Farm Mortgage Company. The contention of appellants is that this foreclosure and the deed made thereunder are void, because the trust deed was given to secure a debt tainted with usury; and it was further alleged that the trustee's sale is void because not properly advertised; that appellee's second chain of title is under an instrument executed by Robert Davis (common source) to Archie Blount (colored) dated February 9, 1921, and filed for record February 24, 1921. This instrument will be set out at length later. The contention of appellants is that this instrument being a mortgage passed no title, and further that its record was improper in that the notary's certificate was not impressed with a seal, hence was not constructive notice. It will be observed that these instruments were executed and recorded prior to the execution of the two mineral deeds under which appellants claim.

It is further alleged that appellee claimed under a deed from Robert Davis (common source), dated February 24, 1922, recorded March 24, 1922. This deed is junior to the mineral deeds under which appellants claim, but being executed prior to the filing for record of the second mineral deed from Davis to Bookhout and Holifield (recorded May 26, 1923), appellee claims protection as an innocent purchaser for value as to the one-half of the oil, minerals, and gas in said lands, which claim is denied by appellants.

Appellants prayed that their title be decreed superior to those asserted by appellee; that the instruments under which he claims be canceled and removed, as clouds from their title to the oil, gas, and minerals in and under said land; and, in the alternative, that they be given the relief prayed for as to one-half the oil, gas, and minerals, in the event the court should decide that they are not entitled to recover the whole.

The answer of appellee includes a general denial and pleas of not guilty, four-year limitation, laches, stale demand, innocent purchaser, and further that appellants are estopped to plead usury or to void the foreclosure and trustee's deed thereunder, in that Robert Davis, under whom they claim, was estopped to plead usury in avoidance of the foreclosure and deed thereunder.

This statement of the pleadings is, in our opinion, sufficient for our purpose.

Percy McGeorge was engaged in the loan business at Dallas, and became interested in the land under the following circumstances, that is, Robert Davis, common source, during the month of April, 1921, applied to McGeorge for a loan on said land, and, pending receipt of an abstract of title, induced McGeorge to advance about $600 in cash, without revealing the existence of the Oklahoma Farm Mortgage Company loan or the foreclosure and sale thereunder, or the existence of the Archie Blount deed. On receipt of the abstract, however, the existence of these instruments was revealed, thereupon, acting under the advice of counsel, McGeorge acquired the three conveyances under which he asserts fee-simple title to said lands, that is, a deed from Oklahoma Farm Mortgage Company made under the trustee's sale, paying $986 therefor, subsequently paid off the first lien, amounting to $2,900 and interest, and obtained a deed from Davis and a deed from Archie Blount, all without notice of any fact not disclosed by the record.

The case was tried to a jury, and, at the conclusion of the evidence, having overruled appellee's motion for a directed verdict, the court submitted the case on special issues, and upon their findings and the evidence, rendered judgment in favor of appellee, from which this appeal was taken.

Appellee cross assigned error on the refusal of the court to direct a verdict in his favor,

and, among other propositions, contends that appellants' alleged cause of action was barred under the four-year statute of limitation (article 5529). This statute reads: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

■■ Our courts have uniformly held that whether a suit is for the recovery of land, does not depend upon the form of the pleadings, but upon the nature of the title asserted. As shown above, appellants claimed title to the minerals, superior to that asserted by appellee, and sought to have the instruments under which he held removed as clouds from their title, and that their title be decreed to be superior to the title asserted by appellee. While the suit is not in the statutory form of trespass to try title, yet the title asserted is complete within itself. Recognizing this to be its nature, appellee urged defenses appropriate to such an action.

The statute invoked by appellee is only applicable where a plaintiff seeks to cancel, reform, or set aside an instrument that stands in the way of a recovery in an action of trespass to try title, and is not applicable to an action to remove clouds from a legal title. In McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315, 320, involving a similar situation, the court said: "The present action is classed by appellees' counsel as one to remove a cloud from a legal title to land, of which they are in possession; their contention being that the deeds under which defendant holds are void, but that day by day they cast a shadow upon appellees' title, giving rise to a continuing cause of action, to which the statute of limitations does not apply. It may be conceded, for the purposes of this case, that, if their proposition as to the character of the two titles is sound, the conclusion contended for would follow, and that the action would not be barred. Indeed, it may be admitted that, if the titles were as contended, there would be no limitation to the suit. While the petition is not, formally, one in trespass to try title, and does not, in terms, ask for recovery of the land, it puts in issue the two titles, and prays for a judgment which would have all of the conclusive force of a judgment in trespass to try title except to give possession, which plaintiffs already have. If, therefore, the title set up by plaintiffs were one upon which such an action could be maintained, this suit might well be considered one for the recovery of lands, and, there being no adverse possession, there would be no limitation." To the same effect, see Stafford v. Stafford, 96 Tex. 106, 112, 70 S. W. 75; Smith v. Olivarri (Tex. Civ. App.) 127 S. W. 235, 238; Carl v. Settegast (Tex. Com. App.) 237 S. W. 238, 242; Thomason v. McIntyre, 113 Tex. 220, 254 S. W. 315. We hold

that the statute invoked is not applicable to the cause of action asserted by appellants.

The other propositions urged by appellee under his cross assignments are also substantially presented in counterpropositions and will be discussed when reached.

Appellants insist that the loan from Oklahoma Farm Mortgage Company to Robert Davis was usurious, that the foreclosure proceedings under the second deed of trust, securing part of the alleged usurious interest, and the trustee's deed made thereunder, were, and are, void and passed no title. Appellants concede, however, that, if the foreclosure was valid, they have no title.

■■ Appellee's contention is, that even if the loan was originally usurious, that, by reason of certain dealings between the parties, it was purged of usury, that Davis became estopped to avoid the foreclosure and sale, hence, that appellants, who claim under him, are also estopped. So we will inquire first whether the loan was in its origin usurious, and, if so, whether, under the facts and circumstances, Robert Davis was estopped to raise the issue of usury in avoidance of the foreclosure and trustee's deed to the loan company, thereunder, for if estopped, appellants, who claim a subsequent title under him, are also estopped. Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 So. 599, Ann. Cas. 1914A, 173; Powell v. Petteway, 69 Fla. 12, 67 So. 230. The facts on the issue of usury are these: In 1919 Robert Davis owned the land in controversy subject to certain outstanding vendor's lien notes, and secured from the Oklahoma Farm Mortgage Company the loan in question, in the principal sum of $3,400, to take up the vendor's lien notes, and to secure same, gave two trust deeds on the land, the first to secure the principal, $3,400, and interest at the rate of 7 per cent. per annum, evidenced by nine bonds, one maturing on each succeeding January 1st, with 10 per cent. interest thereon after maturity, providing for accelerated maturity and sale of the property by the trustee under powers given in the trust deed, directed that the proceeds of such sale be paid out by the trustee as follows: "First, all charges, costs and expenses of executing this trust, including attorney's and trustee's fees; Second, the debt and all sums of money due or to become due hereunder, with interest as agreed, in such priority as said trustee may determine"; the second trust deed, under which the sale in question was made, secured the sum of $452.50, payable in six installments, maturing on each January 1st after its date (January 1, 1920, to and including January 1, 1925), representing 3 per cent. interest per annum on the principal, providing that, if default be made in the payment of the indebtedness, or any of the notes or any interest thereon when due, or in performance of any stipulation, agreement or condition of

said first trust deed, then at the option of the legal owner and holder of the notes, the whole amount thereof shall at once become due and payable, and at the request of the legal owner and holder, the trustee or his successors, etc., shall sell the premises after notice, etc., and apply the proceeds of sale, "first, to the payment of all costs and expenses of said sale, including reasonable trustee's fee; second, to the payment of the indebtedness hereby secured," etc. While there is some controversy on the point, we are of opinion, and find from the evidence, that the amount secured by the second deed of trust represented part of the interest on the loan.

These excerpts reveal that each trust deed contains an accelerating provision, under which unearned interest, in excess of 10 per cent. per annum from the time the money was used, could have been exacted, hence, is condemned as usurious under the rule announced by our Supreme Court in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S. W.(2d) 282, 39 S.W.(2d) 11, 13, 84 A. L. R. 1269, in language as follows: "The contract derives no validity from the fact that payment of the promised compensation, which exceeded the highest allowable conventional interest, was contingent on the creditor's election to demand such excessive compensation. The fact that the contract stipulates for more interest than the law allows on a contingency involving no risk of principal and lawful interest condemns the contract. Once you treat the acceleration clause as obligating the debtors to pay more than permissible conventional interest, instead of stipulating for a penalty, the invalidity of the contract is inevitable. This results from the rule declared by the New York Court of Appeals in words as follows: 'If the contract provide for the payment of the loan with interest, at all events, it is enough to render it usurious, if in addition to the legal interest, it provide for the payment of excessive interest, upon a contingency. A stipulation even for a chance of advantage beyond legal interest, is illegal.' Leavitt v. De Launy, 4 N. Y. 369."

So we conclude that the loan contract was originally usurious, and that the foreclosure and sale, by the trustee under the second trust deed, must be held void (see language of Chief Justice Cureton in Shear Co. v. Hall (Tex. Com. App.) 235 S. W. 195, 198) unless, as the result of the dealings of the parties, the contract was purged of usury prior to the foreclosure sale, or unless, for any other reason, Robert Davis had estopped himself to insist upon usury in avoidance of the foreclosure sale.

■■ The facts upon which the contention is made that the contract was purged of usury, and that estoppel exists, are these: The record discloses that at the time the trust deeds were executed, the loan company had reached the conclusion that the loan was a bad investment, and to avoid the necessity of a formal foreclosure, and to facilitate the handling and disposition of the property, the company procured from Davis, before default (in fact on the same day the trust deeds were executed), the execution of a conveyance of the land to B. A. Skipper, the company's representative at Longview, Gregg county, Tex., who held the legal title for the benefit of the loan company. This conveyance is in form a general warranty deed, dated April 26, 1919, and recites that, "In consideration of the sum of $3,700 to me paid and secured to be paid by B. A. Skipper as follows: $1.00 cash and subject to the notes due the Oklahoma Farm Mortgage Co. of Oklahoma City, Oklahoma." Skipper having ended his connection with the loan company, conveyed the land by warranty deed to H. H. Miller, another representative of the company, having charge of loans in the East Texas territory, who also held title for the benefit of the company. This conveyance is dated March 30, 1920, and contains the following recital as to consideration: "$1.00 cash in hand paid the receipt of which is hereby acknowledged, and the assumption of the outstanding indebtedness due the Oklahoma Farm Mortgage Co. of Oklahoma City, Oklahoma," concluding as follows: "But it is expressly agreed and stipulated that the vendor's lien is retained against the above described property, premises and improvements until the above described notes and all interest thereon are fully paid according to their face and tenor, effect and reading, when this deed shall become absolute." For reasons not disclosed, the company concluded to have the land sold under a formal foreclosure of the trust deed, and to that end had Miller reconvey the land to Robert Davis, so, on February 5, 1921, a short time before the trustee's sale (on March 1, 1921), H. H. Miller conveyed the land to Robert Davis by special warranty deed upon the following recited consideration: "For and in consideration of the sum of one ($1.00) dollar to me paid by Robert Davis, the receipt of which is hereby acknowledged, and the further consideration of the said Davis assuming to pay the balance due the Oklahoma Farm Mortgage Co. on debt made by Robert Davis and a vendor's lien is retained on the hereinafter described land," etc. Each of these conveyances was duly recorded prior to March 1, 1921, the date of the trustee's sale, and the record fails to disclose that, at the time McGeorge purchased, he was apprised of any fact indicating that the conveyances were other than what they purported to be, that is, real transactions.

■ These facts, in our opinion, show waiver by Davis of the usury in the loan contract. His conveyance to Skipper, for the benefit of the loan company, was to avoid formal foreclosure, and, in effect, was a settle-

ment with the loan company; he alone could waive usury, purge the contract of the vice, and estop himself and those claiming a later title under him from afterwards insisting upon usury in avoidance of any title derived under the trust deed. His unequivocal act, in conveying the land to Skipper in trust for the company, had the effect of purging the original contract of usury, in effect, said to the company—"Take the property in satisfaction of my indebtedness to you and do with it as you wish." Any transaction, between debtor and creditor, that results in the cancellation or settlement of a usurious debt, must be given the effect of purging the same of usury. In 39 Cyc. 1006, the following pertinent doctrine is announced: "Where, as the whole or a part of the consideration for the conveyance of land, the grantor accepts for cancellation his own usurious notes, he will be deemed to have waived his right to complain of usury, and the title to the land conveyed will be unaffected by the usury." Also see 39 Cyc. 1002; Michigan Loan, etc., Co. v. Cahill, 253 Mich. 358, 235 N. W. 182, 74 A. L. R. 1181, 1183. But there is also another view of the facts, leading to the conclusion that estoppel exists. McGeorge was entitled to rely upon what the record disclosed at the time of his purchase. It showed a conveyance by Davis to Skipper for a recited consideration of $3,700 to be paid and secured as follows: "Subject to the notes due the Oklahoma Farm Mortgage Co." etc. Having purchased the property subject to this outstanding lien indebtedness, Skipper was impliedly obligated to pay and was estopped to attack the loan on the ground of usury. Doctrine to this effect is announced in 27 R. C. L. § 91, pp. 289, 290, as follows: "It is generally held that one who buys land subject to an existing mortgage, and who therefore obtains an abatement of the purchase price equal to the amount due on the mortgage, cannot attack the mortgage on the ground of usury. Under these circumstances, his position, on principle, is considered to be in no respect different from what it would have been had his vendor counted out in cash the sum specified in the mortgage, and placed it in his hands as his messenger, with direction to pay it to the mortgagee in discharge of the mortgage or lien; and this is true whether there was in terms an express promise to pay or not, as a promise will be implied under such conditions." In this status (impliedly obligated to pay the outstanding notes held by the loan company), Skipper conveyed the land to Miller, who expressly assumed payment of the incumbrance, and agreed to the retention of the vendor's lien on the property to secure the payment of the notes and all interest thereon according to their face, tenor, effect, and reading. Thus, Miller became principal debtor to the loan company, and the liability of Davis was, in effect, that of surety. In Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672, our Supreme Court held that by acceptance, on the part of the holder of an incumbrance, of the promise of the purchaser of the land to assume its payment, the latter became the principal debtor to the holder, and the obligation of his vendor was in nature that of a surety; that it was not necessary for the holder to notify the party assuming payment of his acceptance of such undertaking, and that the agreement to assume payment could not be revoked by contract for rescission and reconveyance between the vendor and vendee. In this status, Miller executed the conveyance to Davis, who expressly assumed, as consideration for the conveyance, payment of the balance due the loan company on his original indebtedness to the company, and agreed that a vendor's lien be retained on the land to secure performance of his obligation. Thus, by an entirely new untainted contract with Miller, Davis again became the principal debtor to the loan company, and, in our opinion, he and those claiming a subsequent title under him, are estopped to set up the usury in the original loan contract in avoidance of the foreclosure and trustee's deed thereunder.

The general doctrine on this subject is announced in 27 R. C. L., p. 288, § 89, as follows: "A vendee who as a part of the purchase price assumes and agrees to pay a mortgage on the property sold, is estopped from asserting that the obligation secured thereby is usurious. This is particularly true where the promise to pay is included in the deed. The whole title of the vendee rests upon the conveyance and the continued existence of the mortgage, as an incumbrance, forms a part of it. He cannot be permitted to claim title both under and against the same deed; to insist upon its efficacy to confer a benefit, and repudiate a burden with which it is qualified; to affirm a part and reject a part."

Appellants make the further contention that the sale under the trust deed was void because notices thereof were not properly posted. The facts bearing upon this issue are these: Riley Strickland, substitute trustee, testified, without contradiction, that he personally posted a notice of the sale at the courthouse of Gregg county in ample time, and mailed one notice to Kilgore and one to Gladewater, both being towns in Gregg county, with instructions to the respective addressee to post the notice in a public place in said town; that later he received a copy of the notice from each addressee with a return thereon stating that the notices had been properly posted and in time. In Walker v. Taylor (Tex. Civ. App.) 142 S. W. 31 (writ denied) the court said: "A trustee in a trust deed, authorized to give notices of sale, may delegate the posting of notices to a subagent, since the act is purely ministerial, and involves no discretion or personal skill." The court further said: "The strictness required

in following the terms of the power granted by the deed of trust is to protect the property of the mortgagor, and when he is satisfied no one else can with reason complain." In Adams v. Zellner (Tex. Civ. App.) 174 S. W. 933, a precise situation was under consideration and a similar contention there made was denied. We therefore overrule appellants' assignments and related propositions and hold that the foreclosure of the second trust deed and the trustee's deed made thereunder are in all respects valid.

The discussion could appropriately end at this point, under the admission of appellants to the effect that, if the foreclosure is valid, they have no title, but as our decision is not final on law questions, we will discuss the case from other angles.

■■■ McGeorge also claims superior title to the property under an instrument executed by Robert Davis to Archie Blount February 9, 1921, filed for record February 12, 1921, and recorded February 24, 1921 (prior to the execution of the conveyance under which appellants claim). Omitting description of the land and the notary's certificate, the instrument reads:

"The State of Louisiana, Parish of Caddo . "Know all Men By these Presents: That I, Robert Davis of the County of Gregg, State of Texas, for and in consideration of the sum of Four Hundred Dollars (400.00) paid by Archie Blunt the receipt of which is hereby acknowledged. It is made a special part of this act of sale that the said Robert Davis shall have the right to redeem the property herein described as sold by him to said Archie Blunt at any time on or before November 15th, 1921, on the payment of which said Archie Blunt binds himself to reconvey said property to said Robert Davis without further consideration have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Archie Blunt of Caddo Parish, Louisiana, two tracts of land out of the survey patented to B. N. Hampton, assignee of Pleasant McAnally Pat. No. 171, Vol. 6, said patent of record in Vol. k pages 253, Deed Records of Gregg County, Texas. (Describing land.) To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto his heirs and assigns forever. And I do hereby bind myself, heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Archie Blunt, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, by and through and under me only. Witness my hand at Shreveport, Louisiana, this 9th day of Feb. A. D. 1921. Signed and delivered in presence of P. G. Hicks, Robert Davis, F. E. Murphy, Archie Blunt. ($.50 revenue stamp affixed and cancelled.)"

Appellants contend that the instrument on its face appears to be a mortgage and not a deed.

A very similar instrument was before the Waco court in Brown v. Hempkins (Tex. Civ. App.) 38 S.W.(2d) 173, 174, the material portion of the instrument there involved and the language of the court follows: "3—26—29 Willie Brown: You have today given me deed to 2 acres of land out of the S. M. Durrett Survey. I agree to deed this property back to you within sixty days upon your payment to me of the sum of $30.00 with 10% interest on same from March 26, 1929. Yours truly, H. L. Hempkins." The court said: "The distinction between a mortgage of land and a conditional sale thereof is clearly stated by our Supreme Court in Astugueville v. Loustaunau, 61 Tex. 233, 238, in an opinion by Mr. Justice Stayton, from which we quote as follows: 'A mortgage "is a security for a debt, while a conditional sale is a purchase for a price paid, or to be paid, to become absolute on a particular event, or a purchase accompanied by an agreement to resell upon particular terms." ' The deed from plaintiffs to defendant and his agreement to reconvey upon the terms stipulated show on their face a conditional sale and not a mortgage. [Citing many authorities.] The burden was on plaintiffs to show that such instruments should not be so construed. [Citing authorities.] To authorize the court to construe such instruments to constitute a mortgage instead of a conditional sale, it devolved upon plaintiffs to show by affirmative testimony that the real intention and agreement of all the parties thereto was that such instruments should constitute a mortgage given as security for a debt and not a conveyance of the property. [Citing authorities.] Such understanding or intention upon the part of plaintiffs alone would not authorize such construction. [Citing authorities.]" Also see Rotan Grocery Co. v. Turner, 46 Tex. Civ. App. 534, 102 S. W. 932. In view of these authorities, we hold that the instrument is a conditional sale and that it became absolute on failure of Davis to repurchase on or before November 15, 1921, as stipulated in the defeasance clause.

■■■ The court admitted evidence in regard to the negotiations, between Davis, Blount, and Samuels, a mutual friend (all colored), that resulted in the execution of the instrument. The evidence was conflicting as to whether a sale or mortgage was intended; but under our view of the matter, this evidence was improperly admitted over the objection of appellee, as he had no knowledge of the existence of these facts, relying at the time of his purchase altogether upon the instrument as recorded, however, no harm resulted, as the jury found in answer to issues Nos. 1 and 2 that the parties intended a sale and not a mortgage.

But appellants objected to these issues and assign error, insisting that the court should have required the jury to find what the parties said and did and not what they intended. This assignment is overruled. The intention of parties is arrived at from what they did and said; and it is never proper to require the jury to make evidentiary findings, only ultimate facts are required.

Appellants also contend that the answers of the jury to these issues are against the great weight of the evidence. This contention is also overruled. The evidence, in our opinion, fully sustains the findings, but as we view the matter, it was entirely unnecessary for the court to have submitted the questions, as the proper construction of the instrument was altogether a question of law for the court.

Appellants say that, as the certified copy of the instrument does not show a notary's seal, it must be presumed that none was impressed on the original instrument, hence, the same was not entitled to registration, and that the imperfect registration thereof was not constructive notice to Bookhout and Holifield of its existence when they later purchased the minerals in the land from Davis.

The certificate of the notary to the acknowledgment reads:

"The State of Louisiana, Parish of Caddo

"Before me, Cal. D. Hicks, a Notary Public in and for the Parish of Caddo, State of Louisiana, on this day personally appeared Robert Davis, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office this 9th day of Feb. A. D. 1921.

"[Signed] Cal. D. Hicks, Notary Public, Caddo Parish, Louisiana."

Below and at the left of the signature is found this language in brackets: "[No seal shown]." This language is no part of either the conveyance or the certificate of acknowledgment, but evidently is the language of the clerk, evidencing the fact that, in preparing the certified copy, he found nothing of record indicating that the certificate of the notary was sealed, however, the notary wrote, above his signature to the certificate, that the same was "Given under my hand and seal of office," and as the instrument was entered of record by the county clerk, the presumption will be indulged that the certificate of the notary was in fact impressed with the notarial seal.

This identical question was before the Supreme Court in the early case of Ballard v. Perry's Adm'r, 28 Tex. 347; in disposing of same the court said: "This deed was also objected to for want of a seal to the notary's certificate of probate. The objection, if established, should have been sustained. The instrument offered in evidence was not the deed itself, but a certified copy of it, from the records of the office of the county clerk. The fact cannot, therefore, be determined by an inspection of the paper presented to the court. But, as the certificate of the notary declares that he has affixed his official seal to it, and the clerk should not have recorded the deed unless this were the case, we think it may be presumed that the seal was properly attached, although in the copy from the record its place is not indicated by a scroll and the initial letters (L. S.), as is customary in copies of sealed instruments. The clerk who recorded this deed may not have supposed this necessary or proper." To the same effect, see Alexander v. Houghton (Tex. Civ. App.) 26 S. W. 1102; Hines v. Thorn, 57 Tex. 98; Witt v. Harlan, 66 Tex. 660, 2 S. W. 41.

The record is bare of any evidence that indicates whether or not the notary, in fact, sealed the certificate of acknowledgement, thus a situation is presented where the question must be determined alone by presumption. However, at the request of appellants, the court submitted the following issue: "Do you find and believe from a preponderance of the evidence that the notary who took the acknowledgment to the instrument from Archie Blount to Robert Davis, dated Feb. 9, 1921, failed to place thereon an official seal?" The jury answered "No." It will be observed that this issue misdescribes the document, in that, it is described as from Archie Blount to Robert Davis, whereas, the converse was true, but this is immaterial, as the jury understood the instrument referred to in the issue, to which they answered "No," meaning that, the notary did not fail to impress the certificate with the official seal. But it is contended by appellants that the finding of the jury is vitiated by their misconduct. On hearing the motion for new trial, it was shown that one juror examined a dictionary to satisfy himself as to the meaning of the word "seal" (whether before or after the issue was answered is left in doubt by the testimony), and that a juror stated, in the presence of others, that he had in his possession at home some old deeds without any seal impressed thereon, and that they were good deeds. We do not think appellant could have been prejudiced by this discussion, as the statement of the juror in regard to the unsealed old deeds and the definition of the word "seal" were not relevant to the issue under consideration, that is, whether or not the notary failed to impress his official seal upon the certificate of acknowledgment to the instrument then under consideration. Besides, in view of the absence of evidence on the issue, we do not think the issue should

have been submitted, as the question was one of law determinable alone by legal presumption.

The twelfth and last proposition urged by appellants is that the argument of counsel for appellee was improper, inflammatory, prejudicial, and that the court erred in permitting same and in overruling appellants' motion for a new trial based thereon. Appellants took a bill of exception to the entire closing argument for appellee; excerpts from the argument were complained of by appellants in their motion for a new trial, and are presented for our consideration.

In disposing of this proposition we do not deem it necessary to follow appellants' lengthy discussion, which takes up thirty pages of the brief, deeming it sufficient to say that, after carefully considering the matter, we fail to find an instance where counsel wandered far afield from legitimate advocacy, only in one passage do we think he offended, that is, in asking jurors to place themselves in "the shoes" of his client, but in this connection, he immediately said "and I am willing for you to put yourselves in their (appellants') shoes too, because it is still just as simple to find that they have no title."

Arguments of this nature have been repeatedly condemned as improper by our courts, but in the instant case we hold, as did the trial court, that appellants were not prejudiced. The argument was such that any statement of counsel deemed objectionable could have been corrected, explained, or rendered harmless by proper instruction by the court, had any objection been made at the time of delivery, but no such objection was made, and under the rule announced by the Commission of Appeals, in Robbins v. Wynne, 44 S.W.(2d) 946, the error, if any, in the argument, was waived.

In no event, however, could appellants have been prejudiced by the argument, for as we view the case, its decision necessarily turns on undisputed facts and the proper construction of written instruments, in other words, turns on questions of law and not of fact.

We are also of opinion that appellee showed title superior to that claimed by appellants, to one-half the oil, gas, and minerals in and under the lands, by virtue of the deed from Robert Davis to appellee dated February 24, 1922, recorded March 24, 1922. While this deed is junior to the mineral deeds from Davis to Bookhout and Holifield, yet it was executed and delivered prior to the registration of the second mineral deed, which was not recorded until May 26, 1923, and it does not appear that appellee had actual notice of its execution at the time of his purchase.

Assignments not discussed are deemed without merit, and, together with those discussed, are overruled. Finding no reversible error in the judgment of the trial court, the same is in all things affirmed.

*Affirmed.*

## On Rehearing.

Plaintiffs in error present a well argued motion for rehearing, in which the grounds originally urged for reversal are again presented, but our concern is only with reference to allegations that challenge the correctness of certain of our findings of fact.

Plaintiffs in error say that "should the court on reconsideration of this case adhere to its conclusion, that McGeorge is an innocent purchaser and has proved estoppel, then we respectfully request the court to set forth the evidence on which such finding is based."

The facts, upon which we held that plaintiffs in error were estopped to plead usury in avoidance of the foreclosure sale and trustee's deed conveying the interest of Robert Davis in the land to the Oklahoma Farm Mortgage Company, are fully set out in the original opinion, and, as the record was exhausted with reference to the grounds of estoppel discussed, we are unable to say more, however, we think there exists still another reason why plaintiffs in error were estopped to insist upon usury in avoidance of the instruments above mentioned.

At the time Messrs. Bookhout and Holifield purchased and took conveyances of the oil, gas, and other minerals in the land, they were informed by Davis that the land was then under mortgage to the Oklahoma Farm Mortgage Company to secure an indebtedness; they understood that Davis recognized the validity of the loan and the deeds of trust securing the same, and purchased subject to and in recognition of the validity of the trust deeds held by the mortgage company; the records disclosing that, at that time, the second trust deed had been foreclosed and the land conveyed to the loan company, of which fact Bookhout and Holifield had constructive notice.

These facts, in our opinion, show that Bookhout and Holifield took conveyances from Davis subject to the loan and rights of the mortgage company, hence impliedly agreed that the lien was valid, and thereby estopped themselves and those claiming under them, to thereafter dispute that fact. One purchasing real estate with knowledge of the existence of and in subordination to a mortgage, although the mortgage, as to the vendor, may be void, is bound thereby, and is estopped to thereafter dispute the validity of the lien. This doctrine was announced in Rice-Stix, etc., Co. v. First National Bank, 231 S. W. 386, 388, where the Commission of Appeals held that a purchaser of land, with knowledge that the vendor

recognized as valid an existing lien, was estopped to challenge its validity, although the property conveyed, upon which the lien existed, was in fact the homestead of the vendor. Judge Spencer, speaking for the commission on this occasion, said: "The uncontroverted facts showing that the bank took the property subject to the record, which revealed the lien and with knowledge that Gullidge [vendor] recognized the lien as security to protect his indebtedness, it [the bank] is, as a matter of law, under such facts, estopped to deny the validity of the lien and the mortgagee is therefore entitled to a judgment of foreclosure." To the same effect see Wooten Motor Co. v. First Bank (Tex. Com. App.) 281 S. W. 196, 197. We hold therefore that, for this additional reason, plaintiffs in error are estopped to raise the question of usury.

█ Plaintiffs in error also request that, should we adhere to the conclusion that McGeorge is an innocent purchaser, that we set forth the evidence on which such finding is based, and, in this connection, they say: "We do seriously challenge and take exception to the general statement of the court running through its entire opinion that McGeorge was an innocent purchaser, and as such was entitled to rely on the records"; again they challenge the correctness of our statement (page 3 of opinion [65 S.W.(2d) 514]) to the effect that, subsequent to the purchase of the property, McGeorge paid off the first lien existing upon the property, amounting to $2,900 and interest, and obtained a deed from Davis and a deed from Archie Blount, all without notice of facts other than as disclosed by the record. Pursuing this line of thought further, plaintiffs in error argue that "the undisputed testimony and McGeorge's own admission showed that at the time he first came in contact with Davis, Davis was in possession of the land, and McGeorge knew it. In addition to such notice as will be carried by possession, Davis told McGeorge in unqualified terms that he still owned and claimed the land. In view of this fact, how could McGeorge have relied upon an apparent title in someone else? To be more specific, how could he have relied on an apparent title in Blount under the instrument given him, assuming that it was regular on its face, and how could he have relied on any apparent title in Oklahoma Mortgage Farm Company by virtue of their foreclosure? * * * McGeorge did have notice outside the record of the possession of Robert Davis and his assertion of title despite the fact that he had given a deed to Blount and a foreclosure sale had been made to Oklahoma Farm Mortgage Company. Furthermore, the evidence raised an issue not submitted to the jury and waived by defendant in error McGeorge to the effect that McGeorge had

actual notice of the claims of Bookhout and Holifield under the second mineral deed."

It is true that, at the time (April, 1921) Davis applied to McGeorge for a loan on the land, Davis was in possession, falsely claiming to be its owner, in the face of records disclosing that all his right, title, and interest had, on March 17, 1921, passed to the loan company under the foreclosure, and that even prior to that date (February 9, 1921) he had conveyed the land to Archie Blount. Thus, it appearing that, prior to the time McGeorge was requested to make the loan, all of Davis' right, title, and interest in the land had passed to others (under whom McGeorge claims), hence, in such a situation, we hold that McGeorge was neither required to take notice of, nor to inquire or investigate for facts, other than as disclosed by the record. This doctrine is well established in this state. See Eylar v. Eylar, 60 Tex. 315; Hawley v. Geer (Tex. Sup.) 17 S. W. 914, 916; Watkins v. Sproull, 8 Tex. Civ. App. 427, 28 S. W. 356; Hickman v. Hoffman, 11 Tex. Civ. App. 605, 33 S. W. 257.

In the original opinion we stated, and here reiterate, that while the evidence was conflicting as to whether the conveyance from Davis to Blount was intended as a sale or a mortgage, that McGeorge had no knowledge of the existence of these extraneous facts, hence, necessarily relied upon the record disclosures, and in this sense we think he was an innocent purchaser as to the Blount chain of title.

Having fully considered all grounds urged by plaintiffs in error for rehearing, the same are overruled.

Overruled. █